UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

THE HAUNTED FORESTS LLC and
TRACY A. QUINN,

               Plaintiffs,

        v.

TOWN OF WILSON, NY, TOWN OF WILSON
ZONING BOARD OF APPEALS, TRAVIS EVANS
(in his individual and official capacity as Code
Enforcement Office/Building Inspector), DOYLE
PHILLIPS (in his individual and official capacity as
Town Supervisor), ROBERT HULL (in his individual
and official capacity as Town Councilman and Chairman
of the Ethics Committee), AGNES DIANE MUSCOREIL
(in her individual and official capacity as Town Clerk),
JOHN MOLEY (in his individual and official capacity as
a Member of the Zoning Board of Appeals), ESTATE OF
JAMES V. MUSCOREIL, SR. (in his individual and
official capacity as a Town Councilman); and MARK
SCHMITKONS (in his individual and official capacity as
a Member of the Ethics Committee),

               Defendants.

―――――――――――――――――――――――――――

**VERIFIED ANSWER**

Case No.:
1:25-cv-01124-LJV

Defendants the Town of Wilson, NY (the "Town"); the Town of Wilson

Zoning Board of Appeals (the "ZBA"); Travis Evans, sued "in his individual and official

capacity as Code Enforcement Office/Building Inspector" [sic]; Doyle Phillips, sued "in his

individual and official capacity as Town Supervisor"; Robert Hull, sued "in his individual

and official capacity as Town Councilman and Chairman of the Ethics Committee"; Agnes

Diane Muscoreil, sued "in her individual and official capacity as Town Clerk"; John Moley,

sued "in his individual and official capacity as a Member of the Zoning Board of Appeals";

Estate of James V. Muscoreil, Sr., sued "in his individual and official capacity as a Member

of the Zoning Board of Appeals"; and Mark Schmitkons, sued "in his individual and official capacity as a Member of the Ethics Committee" (collectively, "Defendants," with Travis Evans, Doyle Phillips, Robert Hull, Agnes Diane Muscoreil, John Moley, James V. Muscoreil, Sr., and Mark Schmitkons together denoted as the "Individual Defendants"), by and through their attorneys, Phillips Lytle LLP and Napierski, VanDenburgh, Napierski & O'Connor, L.L.P., answer the Verified Complaint (the "Complaint") of The Haunted Forests LLC ("Haunted Forest") and Tracy A. Quinn (collectively with Haunted Forest, "Plaintiffs") as follows:

1.     Defendants offer no response to paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 26, 31, 32, 37, 44, 46, 47, 54, 55, 57, 63, 64, 65, 67, 68, 70, 78, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 98, 100, 101, 103, 104, 105, 106, 108, 112, 115, 116, 125, 127, 128, 132, 133, 134, 135, 136, 141, 142, 143, 145, 154, 155, 162, 165, 166, 167, 168, 169, 172, 173, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 190, 191, 192, 193, 194, 195, 196, 197, 198, 200, 201, 202, 203, 205, 206, 207, 208, 209, 210, 212, 214, 215, 216, 217, 218, 219, 221, 222, 223, 224, 225, 226, 228, 229, 230, 231, and 232 of the Complaint, inasmuch as the assertions made in those paragraphs make legal conclusions, rather than factual allegations for which a response is required.  To the extent a response may be required, Defendants deny the allegations contained in those paragraphs.  Defendants further allege that the State Environmental Quality Review Act ("SEQRA") referenced in paragraph 88 of the Complaint, Defendant Travis Evans' "sworn deposition" testimony referenced in paragraph 106 of the Complaint, and the Town Supervisor's "correspondence" referenced in paragraph 115 of the Complaint speak for themselves.

2.      With respect to the allegations contained in paragraph 11 of the Complaint, Defendants admit that Tracy A. Quinn is the owner of certain real property located at 2860 Beebe Road in the Town (the "Site").  Defendants offer no response to the remaining allegations contained in paragraph 11 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required.  To the extent a response may be required, Defendants deny those allegations.

3.      With respect to the allegations contained in paragraph 12 of the Complaint, Defendants admit that, in 2021 and 2022, Plaintiff The Haunted Forests LLC operated an event on the Site that included, in part, a corn maze and a hayride component. Defendants offer no response to the remaining allegations contained in paragraph 12 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required.  To the extent a response may be required, Defendants deny those allegations.

4.      With respect to the allegations contained in paragraph 15 of the Complaint, Defendants admit that Defendant Travis Evans has served as a Building Inspector and Code Enforcement Officer for the Town.  Defendants offer no response to the remaining allegations contained in paragraph 15 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required.  To the extent a response may be required, Defendants deny those allegations.

5.      With respect to the allegations contained in paragraph 16 of the Complaint, Defendants admit that Defendant Doyle Phillips has served as the Town Supervisor for the Town.  Defendants offer no response to the remaining allegations contained in paragraph 16 of the Complaint, inasmuch as those allegations make legal

3

conclusions, rather than factual allegations for which a response is required. To the extent a response may be required, Defendants deny those allegations.

6. With respect to the allegations contained in paragraph 17 of the Complaint, Defendants admit that Defendant Robert Hull has served as a member of the Town Board in the Town and as Chairman of the Town's Ethics Committee. Defendants offer no response to the remaining allegations contained in paragraph 17 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required. To the extent a response may be required, Defendants deny those allegations.

7. With respect to the allegations contained in paragraph 18 of the Complaint, Defendants admit that Defendant Agnes Diane Muscoreil has served as the Town Clerk for the Town. Defendants offer no response to the remaining allegations contained in paragraph 18 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required. To the extent a response may be required, Defendants deny those allegations.

8. With respect to the allegations contained in paragraph 19 of the Complaint, Defendants admit that Defendant John Moley has a member of the ZBA. Defendants offer no response to the remaining allegations contained in paragraph 19 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required. To the extent a response may be required, Defendants deny those allegations.

9. With respect to the allegations contained in paragraph 20 of the Complaint, Defendants admit that James V. Muscoreil, Sr., is deceased and served as a

4

member of the Town Board for the Town before his death. Defendants offer no response to the remaining allegations contained in paragraph 20 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required. To the extent a response may be required, Defendants deny those allegations.

10. With respect to the allegations contained in paragraph 21 of the Complaint, Defendants admit that Defendant Mark Schmitkons has served as an alternate member of the Town's Ethics Committee. Defendants offer no response to the remaining allegations contained in paragraph 21 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required. To the extent a response may be required, Defendants deny those allegations.

11. With respect to the allegations contained in paragraph 22 of the Complaint, Defendants admit that Tracy A. Quinn is the sole owner of certain real property, consisting of approximately 37 acres, located at 2860 Beebe Road in the Town (the "Site"). Defendants offer no response to the remaining allegations contained in paragraph 22 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required. To the extent a response may be required, Defendants deny those allegations.

12. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 23, 24, 25, 28, 29, 30, 33, 35, 36, 38, 42, 43, 45, 49, 50, 51, 52, 59, 60, 69, 72, 73, 76, 79, 80, 81, 109, 110, 111, 118, 119, 120, 121, 124, 137, 149, 153, 158, and 159 of the Complaint. Defendants further allege that the text of any claimed and unspecified "written statement" on behalf of the Town of Porter,

5

New York, as is referenced in paragraphs 119, 120, and 121, of the Complaint speaks for itself.

13.     With respect to the allegations contained in paragraph 27 of the Complaint, Defendants admit that the referenced "event" had a Halloween theme and included, in part, a corn maze and a hayride component.  Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 27 of the Complaint.

14.     Defendants admit the allegations contained in paragraphs 34, 53, 56, 58, 62, 140, 146, 147, 148, 150, 157, and 161 of the Complaint.

15.     With respect to the allegations contained in paragraph 39 of the Complaint, Defendant deny knowledge or information sufficient to form a belief as to the truth of the allegation that, despite some unspecified "connection to one of the two most vocal objectors" claimed to oppose an event operated by The Haunted Forests LLC on the Site, John Moley "did not disclose" a certain "relationship" with Brandon Darnell. Defendants offer no response to the remaining allegations contained in paragraph 39 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required.  To the extent a response may be required, Defendants deny those allegations.

16.     Plaintiffs deny the allegations contained in paragraphs 40, 41, 61, 66, 71, 114, 122, 123, 129, 130, 151, 156, 211, and 213 of the Complaint.  Plaintiffs further allege that "[p]ast ZBA meeting minutes" and Defendant John Moley's "sworn deposition statements" referenced in paragraph 130 of the Complaint speak for themselves.

6

17.     With respect to the allegations contained in paragraph 48 of the Complaint, Defendants admit that Chris Jordan formerly served as Code Enforcement Officer for the Town, and that he was employed by the Town from April 2018 through August 2022.  Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 48 of the Complaint.

18.     With respect to the allegations contained in paragraph 74 of the Complaint, Defendants deny that any "statements" alleged in that paragraph were "false." Defendants admit the remaining allegations contained in paragraph 74 of the Complaint.

19.     With respect to the allegations contained in paragraph 75 of the Complaint, Defendants deny knowledge or information sufficient to form a belief as to whether Rebecca Susice ever testified under oath that Defendant Travis Evans was "present" for some unspecified "conversation."  Defendants deny the remaining allegations contained in paragraph 75 of the Complaint.  Defendants further allege that the text of any past sworn testimony by Rebecca Susice speaks for itself.

20.     With respect to the allegations contained in paragraph 77, Defendants admit that the ZBA adjourned a hearing on April 26, 2023, concerning a special-use permit application made on behalf of The Haunted Forests LLC, and further allege that, in fact, counsel for The Haunted Forests LLC requested the adjournment.  Defendants deny the allegation that the ZBA accepted any claimed "misstatements" by Defendant Travis Evans. Defendants offer no response to the remaining allegations contained in paragraph 77 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required.  To the extent a response may be required, Defendants deny those allegations.

21. With respect to the allegations contained in paragraph 96 of the Complaint, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that John Sinclair himself admitted observing some unspecified "event" and developing any opinion whether "it was too loud." Defendants further allege that the text of any past deposition testimony offered by John Sinclair speaks for itself.

22. With respect to the allegations contained in paragraph 97 of the Complaint, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that any representative of the Niagara County Sheriff's Office "cautioned Darnell and Schmitkons about calling in frivolous complaints." Defendants admit that Niagara County Sheriff's deputies were called to the Site numerous times in 2021 and 2022. Defendants offer no response to the remaining allegations contained in paragraph 97 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required. To the extent a response may be required, Defendants deny those allegations.

23. With respect to the allegations contained in paragraph 99 of the Complaint, Defendants admit that the referenced "report" was not initially drafted by Defendants Travis Evans, but that Travis Evans did adopt that report, which attributed adverse environmental impacts to Plaintiffs' operations on the Site. Defendants deny the remaining allegations contained in paragraph 99 of the Complaint.

24. With respect to the allegations contained in paragraph 102 of the Complaint, Defendants admit that, at various times, Defendant Travis Evans has held himself out to serve as the Town's Code Enforcement Officer, Building Inspector, and/or Zoning Officer.

25.     With respect to the allegations contained in paragraph 107 of the Complaint, Defendants admit that Defendant Travis Evans has received a badge from the Town of Wilson, as well as a shirt (which Plaintiffs call a "uniform") to wear while he is on official business for the Town.  Defendants deny the allegation that Travis Evans was "equipped with" any "marked vehicle."  Defendants offer no response to the remaining allegations contained in paragraph 107 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required.  To the extent a response may be required, Defendants deny those allegations.

26.     With respect to the allegations contained in paragraph 113 of the Complaint, Defendants admit that Defendant Agnes Diane Muscoreil sent an e-mail to Wilson Town Attorney Kyle Andrews, Esq., on or about June 27, 2023, and that the text of such e-mail speaks for itself.  Defendants deny the remaining allegations contained in paragraph 113 of the Complaint.

27.     With respect to the allegations contained in paragraph 117 of the Complaint, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations that the New York Department of State "communicated directly with the Town Supervisor" or ever relied on claimed "representations" by the Town Supervisor.  Defendants offer no response to the remaining allegations contained in paragraph 117 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required.  To the extent a response may be required, Defendants deny those allegations.

28.     With respect to the allegations contained in paragraph 126 of the Complaint, Defendants deny that any claimed "facts collectively demonstrate" any

"deliberate cover-up," which is not specified in any event.  Defendants offer no response to the remaining allegations contained in paragraph 126 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required.  To the extent a response may be required, Defendants deny those allegations.

29.    With respect to the allegations contained in paragraph 131 of the Complaint, Defendants admit that the Town requested certain financial information, such as tax returns, from The Haunted Forests LLC.  Defendants deny the remaining allegations contained in paragraph 131 of the Complaint.

30.    With respect to the allegations contained in paragraph 138 of the Complaint, Defendants admit that the Town has never directed Defendant Travis Evans "to continuously monitor" any business, whether operated by The Haunted Forests LLC or otherwise.  Defendants also admit that the Town directed Travis Evans to monitor the operations of The Haunted Forests LLC a number of times per week during the fall of 2022. Defendants offer no response to the remaining allegations contained in paragraph 138 of the Complaint, inasmuch as those allegations make legal conclusions, rather than factual allegations for which a response is required.  To the extent a response may be required, Defendants deny those allegations.

31.    With respect to the allegations contained in paragraph 139 of the Complaint, Defendants admit that, on one occasion in the fall of 2022, Defendant Travis Evans left a wedding to go to the Site in response to a report of shots fired.  Defendants deny the remaining allegations contained in paragraph 139 of the Complaint.

32.    With respect to the allegations contained in paragraph 144 of the Complaint, Defendants deny knowledge or information sufficient to form a belief as to the

10

truth of any allegation concerning any "hop[e]" on the part of the Plaintiffs.  Defendants

offer no response to the remaining allegations contained in paragraph 144 of the Complaint,

inasmuch as those allegations make legal conclusions, rather than factual allegations for

which a response is required.  To the extent a response may be required, Defendants deny

those allegations.

33.     With respect to the allegations contained in paragraph 152 of the

Complaint, Defendants admit the allegation that Defendant John Moley's sister, Mary

Moley, has served as a member of the Town's Ethics Committee.  Defendants offer no

response to the remaining allegations contained in paragraph 152 of the Complaint,

inasmuch as those allegations make legal conclusions, rather than factual allegations for

which a response is required.  To the extent a response may be required, Defendants deny

those allegations.

34.     With respect to the allegations contained in paragraph 160 of the

Complaint, Defendants admit that Defendant Robert Hull had spoken publicly at Wilson

Town Board meetings in opposition to the operations of The Haunted Forests LLC.

Defendants deny the remaining allegations contained in paragraph 160 of the Complaint.

35.     With respect to the allegations contained in paragraph 163 of the

Complaint, Defendants admit that Defendant Mark Schmitkons "disclosed that he was a

resident [of] Beebe Road near the Haunted Forest operation," but deny that Mark

Schmitkons "failed to … make any mention of his … opposition" to that opposition, and

further deny the characterization of that opposition as "vehement."  Defendants offer no

response to the remaining allegations contained in paragraph 163 of the Complaint,

inasmuch as those allegations make legal conclusions, rather than factual allegations for

which a response is required.  To the extent a response may be required, Defendants deny those allegations.

36.     With respect to the allegations contained in paragraph 164 of the Complaint, Defendants offer no response to the allegation that Robert Hull "failed to recuse himself" makes a legal conclusion, rather than a factual allegation for which a response is required.  To the extent a response may be required, Defendants deny that allegation. Defendants deny the remaining allegations contained in paragraph 164 of the Complaint.

37.     With respect to the allegations contained in paragraph 170 of the Complaint, Defendants admit that Plaintiffs "were subsequently advised of the Ethics Committees [sic] finding," but deny the remaining allegations contained in paragraph 170.

38.     With respect to the allegations contained in paragraph 171 of the Complaint, Defendants admit that Defendant Robert Hull, as well as Defendant John Moley's sister, served on the Town's Ethics Committee; and that Defendant Mark Schmitkons served as an alternate member of the Ethics Committee.  Defendants offer no response to the allegation of a "conspiracy to violate Plaintiffs' civil rights," because that allegation makes a legal conclusion, rather than a factual allegation for which a response is required.  To the extent a response may be required, Defendants deny that allegation. Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 171 of the Complaint.

39.     With respect to the allegations contained in paragraph 174 of the Complaint, Defendants repeat and reallege their answers to paragraphs 1 through 173 of the Complaint.

12

40. With respect to the allegations contained in paragraph 189 of the Complaint, Defendants repeat and reallege their answers to paragraphs 1 through 188 of the Complaint.

41. With respect to the allegations contained in paragraph 199 of the Complaint, Defendants admit that Defendant Travis Evans replaced Chris Jordan as the Town's Code Enforcement Officer. Defendants offer no response to the allegation that Chris Jordan "refused to execute unlawful directives," because that allegation makes a legal conclusion, rather than a factual allegation for which a response is required. To the extent a response may be required, Defendants deny that allegation. Defendants deny the remaining allegations contained in paragraph 199 of the Complaint.

42. With respect to the allegations contained in paragraph 204 of the Complaint, Defendants repeat and reallege their answers to paragraphs 1 through 203 of the Complaint.

43. With respect to the allegations contained in paragraph 220 of the Complaint, Defendants repeat and reallege their answers to paragraphs 1 through 219 of the Complaint.

44. With respect to the allegations contained in paragraph 227 of the Complaint, Defendants repeat and reallege their answers to paragraphs 1 through 226 of the Complaint.

45. Defendants deny each and every other allegation of the Complaint (including, but not limited to, any and all headings or allegations for which no paragraph number is assigned) that has not been admitted, denied, or otherwise avoided, and further

deny that Plaintiffs should receive the judgment they request in the "**PRAYER FOR RELIEF**" and the "Wherefore" clause on page 31 of the Complaint.

## DEFENDANTS' COUNTER-ALLEGATIONS

**A.    The ZBA's evaluation of special use permit applications under the Town Code**

46.    Pursuant to the Town of Wilson Code ("Town Code") § 127-43, the ZBA is vested with all powers and duties prescribed by New York Town Law § 267 and the Town Code. **Exhibit A** is a true and accurate copy of Town Code Chapter 127, Article VII, which includes Town Code §§ 127-42 through 127-49.

47.    Pursuant to Town Code § 127-46, the ZBA "shall hear and decide any requests for a special permit," alternatively known as a special-use permit.

48.    In accordance with Town Code § 127-48(D), the ZBA must fix a time and place for a public hearing on any special permit application, and must provide certain notice thereof.

49.    Pursuant to Town Code § 127-48(A)(3), prior to the hearing on a special permit application, the Town's Planning Board must submit an opinion on the application, which shall be read into the record at the public hearing.

50.    Under Town Code § 127-46(A), the ZBA shall not grant a special permit unless and until it makes the appropriate findings, including, but not limited to, regarding the use and enjoyment of neighboring properties, traffic adequacy and safety, effects on public services and utilities, adequacy of sanitary sewage and storm drainage, and impacts on the appearances of the Town.

51.    Pursuant to Town Code § 127-46(B), the ZBA is required to decide, among other mandatory criteria, whether a proposed action would "detract materially from

14

the use or enjoyment of neighboring property," whether "conditions of traffic" would be created that would "adversely affect the neighborhood," and whether the "effect of the proposed change on the appearances of the Town" would be "deleterious."

52.     The ZBA, in granting any special permit, has broad discretion to impose any such conditions it considers necessary to comply with the purposes and intent of the Zoning Ordinance (consisting of Town Code Chapter 127), including prescribing the hours or methods of operation, under Town Code § 127-46(B).

53.     Further, per Town Code § 127-46(B), the ZBA is authorized to revoke any special permit if the recipient of the permit does not fully comply with the permit's conditions.

**B.     Haunted Forest's 2021 application for a special use permit**

54.     In 2021, Plaintiff The Haunted Forests LLC ("Haunted Forest") applied to the ZBA to request a special-use permit pursuant to Town Code § 127-11(D)(14) (the "2021 Application").  **Exhibit B** is a true and accurate copy of Town Code § 127-11.

55.     Haunted Forest applied for the special-use permit to hold an event four nights per week from September to November 2021.  Haunted Forest purported the event would involve a haunted hayride and haunted house, corn maze, farm market, vendors, and parking for over one hundred vehicles (the "Event").

56.     The Event was to be held at the "Site," property which is owned by Plaintiff Tracy A. Quinn.

57.     ZBA Chair John Sinclair received complaints from Town residents related to the 2021 Application, including the potential for noise, traffic, safety, and light issues posed by the Event.

15

58.    Pursuant to Town Code § 127-48, the ZBA set a time and place for a public hearing on the 2021 Application and provided notice of the hearing to all interested parties.  **Exhibit C** is a true and accurate copy of the notice of that public hearing, which took place before the ZBA on March 22, 2021.

59.    **Exhibit D** is a true and accurate copy of the minutes of the public hearing that took place before the ZBA on March 22, 2021.

60.    Cory Quinn, Tracy A. Quinn's brother-in-law and an owner of Haunted Forest, appeared and testified at the ZBA's March 22, 2021 public hearing on behalf of Haunted Forest.

61.    Members of the public, including neighboring property owners, also testified at this public hearing and raised concerns with the Event, including, but not limited to, concerns with potential noise impacts.  *See* Ex. D.

62.    At the time of the March 22, 2021 public hearing, the Town Zoning Ordinance did not permit the activities and uses proposed by the 2021 Application as a special use in the Rural Residential 200 District, where the Site is located.

63.    This was explained in the presence of Cory Quinn, who informed the ZBA that he would follow through with their recommendations for consideration of the 2021 Application.

64.    Accordingly, the ZBA denied the 2021 Application at the March 22, 2021 public hearing.

65.    Later that year, the Town amended Town Code § 127-11(d)(14) to authorize "agricultural tourism related activities" by special use permit in the Rural Residential 200 District in order to allow Haunted Forest to obtain a special use permit.

**Exhibit E** is a true and accurate copy of the minutes of the ZBA's May 14, 2021 special meeting.

66.     The ZBA then held a second hearing on the 2021 Application on August 23, 2021, following the requisite public notice procedure under Town Code § 127-48.  **Exhibit F** is a true and accurate copy of the notice for the ZBA's August 23, 2021 public hearing.  **Exhibit G** is a copy of the minutes for the ZBA's August 23, 2021 public hearing.

67.     The ZBA unanimously approved and issued a special use permit to Haunted Forest on August 25, 2021 (the "2021 SUP").  **Exhibit H** is a true and accurate copy of the ZBA's special use permit findings and decision dated August 25, 2021.

68.     Pursuant to the ZBA's discretion under Town Code § 127-46(B), the ZBA imposed certain conditions with the 2021 SUP, including limitations on hours of operation, noise, and lighting; and additional requirements for screening and parking.

69.     On February 15, 2022, after a complaint from Haunted Forest that the 2021 SUP conditions were unduly burdensome on its operations, the Department of Agriculture and Markets issued a letter stating the 2021 SUP conditions were reasonable. **Exhibit I** is a true and accurate copy of the February 15, 2022 letter from the Department of Agriculture and Markets, in which the Department advised those conditions were reasonable.

70.     Haunted Forest operated its Event in 2021 pursuant to the 2021 SUP.

**C.     Haunted Forest's 2022 application for renewal of special use permit**

71.     In 2022, Haunted Forest applied to renew the 2021 SUP for the fall 2022 season ("2022 Application") pursuant to Town Code § 127-46(C)(1).

17

72.     Pursuant to Town Code § 127-48, the ZBA set a time and place for a public hearing on the 2022 Application and provided notice of the hearing to all interested parties.  **Exhibit J** is a true and accurate copy of the meeting minutes for the ZBA's March 28, 2022 public hearing.

73.     Neighboring property owners submitted over 80 verbal and written complaints to the ZBA in relation to the prior operations of the Event in 2021.  These complaints included comments relating to the loud, violent sounds produced by the Event (*e.g.*, women screaming, chainsaws, and yelling) and the frequent, public intoxication of Event attendees.

74.     The ZBA postponed its decision on the 2022 Application at the March 28, 2022 public hearing because Haunted Forest failed to submit the previous year's revenue receipts, an express condition of the 2021 SUP.

75.     The ZBA held a public hearing on the 2022 Application on June 27, 2022, following the requisite public notice procedure under Town Code § 127-48.  **Exhibit K** is a true and accurate copy of the minutes for the ZBA's June 27, 2022 public hearing.

76.     The ZBA approved the 2022 Application on June 27, 2022, with certain conditions to address noise, light, and traffic impacts ("2022 SUP").  **Exhibit L** is a true and accurate copy of the ZBA's special use permit findings and decision dated July 22, 2022, concerning the 2022 Application.

77.     In October 2022, the ZBA received complaints from neighbors relating to excessive noise, light, and traffic impacts created by the Event.

**D.    Haunted Forest's 2023 application for renewal of the 2022 SUP**

78.    In December 2022, Haunted Forest applied to renew the 2022 SUP for the fall 2023 season ("2023 Application").  **Exhibit M** is a true and accurate copy of that 2023 Application.

79.    Pursuant to Town Code § 127-48, the ZBA set a time and place for a public hearing on the 2023 Application and provided notice of the hearing to all interested parties.  **Exhibit N** is a true and accurate copy of the notice of public hearing that took place at the ZBA's meeting on April 26, 2023.

80.    The ZBA indeed held a public hearing on the 2023 Application on April 26, 2023.  **Exhibit O** is a true and accurate copy of the minutes for the ZBA's public hearing and meeting on April 26, 2023.

81.    Plaintiffs' counsel Justin Andreozzi, Esq., appeared and testified on behalf of Haunted Forest at the April 26, 2023 public hearing.

82.    The ZBA received numerous, continued complaints from members of the public at the April 26, 2023 hearing, including, but not limited to, complaints about noise impacts and the ineffectiveness of Haunted Forest's measures to limit excessive light on neighboring properties.

83.    At the public hearing, Mr. Andreozzi requested that the 2023 Application be adjourned because he did not have the lease agreement between Plaintiffs to permit Haunted Forest to operate on the Site.

84.    The ZBA granted Mr. Andreozzi's request to adjourn the hearing on the 2023 Application until the next ZBA meeting.

19

85. The ZBA provided notice to Plaintiffs on May 16, 2023 of a second hearing on the 2023 Application to be held on May 24, 2023. **Exhibit P** is a true and accurate copy of the notices to Plaintiffs regarding the ZBA's May 24, 2023 public hearing.

86. The ZBA held a public hearing on the 2023 Application on May 24, 2023. **Exhibit Q** is a true and accurate copy of the meeting minutes for the ZBA's May 24, 2023 public hearing.

87. Cory Quinn appeared and testified on behalf of Haunted Forest before the ZBA at the hearing on May 24, 2023.

88. Pursuant to its discretionary evaluation of the criteria set forth in Town Code § 127-46(B), the ZBA determined that "[t]here may be a moderate to significant change in the intensity of use of the land" because "hundreds of people are parking and transiting the land" and "[d]esign measures to limit population have thus far over the last two years been unsuccessful." *See* Ex. Q.

89. The ZBA also determined that there may be "[m]oderate to [l]arge" "change to the quality of the existing community" because the Event "changes the quiet residential area into a carnival like neighborhood with commercial levels of traffic, parking, lights, and noise." *Id*.

90. The ZBA determined that "design measures offered thus far have failed to adequately address" the traffic, parking, lights, and noise for the past two years because of "inadequate fencing, inadequate light reduction methods, and later operating times." *Id*.

91.    The ZBA based its 2023 determinations on the past two years of Haunted Forest's operations and specific complaints regarding traffic, safety, lights, and sounds, which included photographic and video evidence.

92.    Due to the nature of its findings, the ZBA issued a positive declaration under the State Environmental Quality Review Act ("SEQRA").

93.    This positive declaration required the completion of an Environmental Impact Statement ("EIS") before the ZBA could ultimately decide whether to grant the 2023 Application.

94.    On June 7, 2023, the Town provided Mr. Andreozzi, as counsel for Haunted Forest, with a letter notifying Haunted Forest of the positive SEQRA declaration. This letter included a summary of the requirements to comply with SEQRA in order to continue with the processing of the 2023 Application.  **Exhibit R** is a true and accurate copy of that letter dated June 7, 2023.

95.    Haunted Forest failed to complete the requested EIS.

96.    Instead of operating in the Town in 2023, Haunted Forest has operated a haunted hayride attraction in Clarence, New York, in the fall seasons in 2023, 2024, and 2025.

**E.    Cory Quinn's ethics complaints against Travis Evans, John Moley, and Agnes Diane Muscoreil**

97.    On June 26, 2023, Mr. Quinn submitted written complaints against Defendants Travis Evans, John Moley, and Agnes Diane Muscoreil to the Town's Ethics Committee (the "Ethics Committee").

98.    On December 4, 2023, the Ethics Committee held a meeting in which Mr. Quinn's complaints were considered and Mr. Evans, Mr. Moley, and Ms. Muscoreil

21

were provided with an opportunity to speak about the allegations against them.  **Exhibit S** is a true and accurate copy of the minutes of the Ethics Committee's meeting on December 4, 2023.

99.    The December 4, 2023 meeting was adjourned to provide the Ethics Committee with additional time to obtain information regarding Cory Quinn's complaints.

100.    On December 8, 2023, the Ethics Committee held another meeting concerning those complaints.  **Exhibit T** is a true and accurate copy of the minutes of the Ethics Committee's meeting on December 8, 2023.

101.    The Ethics Committee unanimously found that Travis Evans, John Moley, and Agnes Diane Muscoreil acted properly, and that none of them violated any ethical standards.  **Exhibit U** is a true and accurate copy of the Summary Report of the Findings of the Ethics Committee concerning Cory Quinn's complaints, and **Exhibit V** is a true and accurate copy of a memorandum from the Town Attorney to the Town Board regarding the Ethics Committee's findings.

102.    Critically, Cory Quinn, Haunted Forest, and/or Tracy A. Quinn could have commenced a proceeding pursuant to New York Civil Practice Law and Rules ("CPLR") Article 78 to challenge the determinations and/or findings of the Ethics Committee.

103.    They never did so, however, and their time for doing so expired no later than sometime in April 2024, *i.e.*, four months after issuance of such determinations and findings.  *Accord*, CPLR 217(1).

22

**F.      Plaintiffs' State Court Litigation**

104.    Plaintiffs commenced a hybrid CPLR Article 78 proceeding and plenary action against the Town and the ZBA in New York State Supreme Court, Niagara County (the "State Court Litigation," Niagara County Index No. E181144/2023), on September 22, 2023, by filing a Verified Petition and Complaint (the "Petition") in the Niagara County Clerk's Office.  **Exhibit W** is a true and accurate copy of the Petition.

105.    The Petition included causes of action under CPLR Article 78 that: (1) challenged the ZBA's positive declaration, because Plaintiffs asserted the Event was agricultural in nature, and therefore exempt from SEQRA review as a matter of law under 6 N.Y.C.R.R. § 617.5(c); and (2) contended the ZBA's review of the Event pursuant to SEQRA manifested a claimed personal vendetta calculated to target an alleged farm operation at the Site.

106.    Plaintiffs also asserted plenary causes of action, including four (the Sixth, Seventh, Eighth, and Ninth Causes of Action) that sought an award of monetary damages pursuant to 42 U.S.C. § 1983 to remedy claimed violations of their rights under the United States Constitutions.

107.    Plaintiffs' other plenary causes of action were for alleged tortious interference with prospective business opportunities, purported injury to business reputation, and a declaratory judgment that Haunted Forest was entitled to operate a corn maze and hayride at the Site.

108.    When Plaintiffs commenced the State Court Litigation, they did not file or serve a summons to invoke the New York State Supreme Court's jurisdiction over the plenary causes of action.

109.    Plaintiffs also did not serve a notice of claim before commencing the State Court Litigation seeking money damages from the Town.

110.    On April 2, 2024, Supreme Court, Niagara County (Hon. Frank A. Sedita III, J.S.C.) entered an Order that granted the Petition with respect to Haunted Forest's and Tracy A. Quinn's CPLR Article 78 causes of action in the State Court Litigation, reversed the ZBA's positive declaration decision, and ordered the ZBA to consider Haunted Forest's pending special use permit without any SEQRA analysis. **Exhibit X** is a true and accurate copy of that Order entered April 2, 2024.

**G.    The ZBA approved the renewal of the special use permit with conditions**

111.    In June 2024, Haunted Forest requested that the ZBA treat the 2023 Renewal Application as applicable to 2024, and also asked for a renewal term of ten years instead of an annual renewal term (the "2024 Renewal Application").

112.    The ZBA accommodated Haunted Forest's request to use the 2023 Renewal Application for 2024, and referred it to the Town's Planning Board (the "Planning Board") for the advisory opinion required by Town Code § 127-48.

113.    On June 17, 2024, the Planning Board held a meeting to reconsider Haunted Forest's 2024 Renewal Application.  **Exhibit Y** is a true and accurate copy of the minutes of the Planning Board's meeting on June 17, 2024.

114.    Following receipt of comments from the public regarding prior adverse environmental impacts experienced during the Event in 2021 and 2022 and regarding Haunted Forest's noncompliance with conditions to prior special use permits, the Planning Board adopted a resolution to recommend that the ZBA deny the 2024 Renewal Application.

24

115.    Even so, however, after a further meeting on the 2024 Renewal Application on June 25, 2024, the ZBA Planning Board adopted Resolution No. ZBA 1-2024, which, among other things, approved Haunted Forest's special-use permit request with certain conditions (the "2024 SUP").  **Exhibit Z** is a true and accurate copy of that Resolution.

116.    If they objected to any of the conditions set forth in the 2024 SUP, Cory Quinn, Haunted Forest, and/or Tracy A. Quinn could have commenced a CPLR Article 78 proceeding to challenge those conditions.

117.    None of them ever did so, however, and their time for doing so expired no later than Friday, October 25, 2024, *i.e.*, four months after the ZBA adopted its Resolution No. 1-2024.  *Accord*, CPLR 217(1).

**H.    Reversing Niagara County Supreme Court, the Appellate Division, Fourth Department, dismisses Haunted Forest's and Tracy A. Quinn's Article 78 causes of action in the State Court Litigation**

118.    On June 28, 2024, the Town and the ZBA moved before Supreme Court, Niagara County, in the State Court Litigation to renew their opposition to the Petition based on the new facts revealed during the ZBA's consideration of the 2024 Renewal Application.

119.    The Town and ZBA simultaneously moved for leave to amend their Verified Answer to the Petition in the State Court Litigation to assert two additional defenses:  (1) Haunted Forest's and Tracy A. Quinn's failure to file or serve a summons to invoke Supreme Court's jurisdiction over the plenary causes of action, and (2) Haunted Forest's and Tracy A. Quinn's failure to serve a notice of claim upon the Town in compliance with New York General Municipal Law § 50-e.

25

120.    On August 14, 2024, Supreme Court, Niagara County (Hon. Frank A. Sedita III, J.S.C.) entered an Order that denied the Town's and the ZBA's motions made on June 28, 2024, in their entirety.

121.    On December 30, 2024, the Town and the ZBA perfected two appeals to the Appellate Division, Fourth Department:  one which sought review of Supreme Court's grant of Haunted Forest's and Tracy A. Quinn's Article 78 causes of action (*see* Ex. X), and one which sought review of Supreme Court's denial of the Town's and the ZBA's motions for leave to renew their opposition to Haunted Forest's and Tracy A. Quinn's Article 78 causes of action and for leave to amend the Town's and the ZBA's Verified Answer to plead additional defenses.

122.    After full briefing and argument on these consolidated appeals, on July 25, 2025, the Fourth Department issued two Memoranda and Orders deciding those appeals.  **Exhibit AA** consists of true and accurate copies of those Memoranda and Orders.

123.    Critically, reversing Supreme Court, Niagara County, the Fourth Department dismissed Haunted Forest's and Tracy A. Quinn's Article 78 causes of action that challenged the ZBA's 2023 SEQRA positive declaration, because the Fourth Department concluded those causes of action were not ripe for adjudication.

124.    The Fourth Department also granted the Town and the ZBA leave to amend their Verified Answer to assert a defense arising from Haunted Forest's and Tracy A. Quinn's failure to serve a timely notice of claim upon the Town.  Pursuant to that defense, the Fourth Department dismissed Haunted Forest's and Tracy A. Quinn's plenary causes of action for tortious interference with business relations and injury to business reputation for lack of subject-matter jurisdiction.

26

125.    Neither Haunted Forest nor Tracy A. Quinn sought leave to appeal to the New York Court of Appeals from these dismissals, which are now law of the case in the State Court Litigation.

126.    The Fourth Department did affirm Supreme Court's denial of the motions by the Town and the ZBA for leave to amend their Verified Answer in the State Court Litigation to assert a defense arising from Haunted Forest's and Tracy A. Quinn's failure to file or serve a summons.  In doing so, the Fourth Department held such a defense raised a defect of personal jurisdiction which had been waived, because the Town and the ZBA had not asserted that defense in their Verified Answer or in a pre-answer motion to dismiss the Petition.

127.    On October 3, 2025, however, the Fourth Department granted the Town and the ZBA leave to appeal to the New York Court of Appeals to evaluate whether Haunted Forest's and Tracy A. Quinn's failure to file a summons was a waivable defect of personal jurisdiction; or a non-waivable defect of subject-matter jurisdiction.  **Exhibit AB** is a true and accurate copy of the Fourth Department's Order that granted the Town and the ZBA leave to appeal to the New York Court of Appeals.

128.    If, in fact, a defense grounded in Haunted Forest's and Tracy A. Quinn's failure to file a summons in the State Court Litigation concerns a non-waivable defect of subject-matter jurisdiction, Haunted Forest's and Tracy A. Quinn's plenary of causes of action seeking money damages to remedy alleged violations of their rights under the United States Constitution pursuant to 42 U.S.C. § 1983 should be entirely dismissed.

129.    On January 2, 2026, the Town and the ZBA filed their Brief to the New York Court of Appeals in the State Court Litigation.

27

130.    Haunted Forest's and Tracy A. Quinn's deadline to file their Brief to the New York Court of Appeals is February 20, 2026; and the Town and the ZBA may file a Reply Brief to the New York Court of Appeals on or before March 9, 2026.

**I.    Haunted Forest and Tracy A. Quinn commence this action recycling their causes of action pursuant to 42 U.S.C. § 1983 from the State Court Litigation**

131.    In the meantime, hedging against the prospect that the New York Court of Appeals may dismiss the State Court Litigation's remaining causes of action pursuant to 42 U.S.C. § 1983 on account of Haunted Forest's and Tracy A. Quinn's failure to file or serve a summons at the inception of that Litigation, Haunted Forest and Tracy A. Quinn commenced this action in New York State Supreme Court, Niagara County, on October 31, 2025.

132.    The Town and the ZBA removed this action to the United States District Court for the Western District of New York on November 3, 2025.

133.    Like the State Court Litigation, Haunted Forest and Tracy A. Quinn in this action seek money damages pursuant to 42 U.S.C. § 1983:  (1) to compensate claimed violations of their rights under the United States Constitution to due process of law (*compare* Complaint ¶¶ 174-188 *with* Ex. W, ¶¶ 149-156) and equal protection of the laws (*compare* Complaint ¶¶ 189-203 *with* Ex. W, ¶¶ 157-160), and (2) to remedy alleged retaliation in response to the exercise of their rights to freedom of speech under the First Amendment to the United States Constitution (*compare* Complaint ¶¶ 204-219 *with* Ex. W, ¶¶ 161-167) and an alleged "conspiracy" to violate their rights under the First and Fourteenth Amendments to the United States Constitution (*compare* Complaint ¶¶ 220-226 *with* Ex. W, ¶¶ 168-175).

**J.      Cory Quinn's public comments**

134.    Cory Quinn has participated in and/or solicited several interviews with media outlets regarding the special use permit applications and the State Court Litigation.

135.    For example, Cory Quinn participated in an interview in connection with an article published on May 30, 2023, by the *Lockport Union-Sun & Journal.*  **Exhibit AC** is a true and accurate copy of the text of that article.

136.    Cory Quinn also participated in an interview in connection with an article published on August 15, 2023 by the *Lockport Union-Sun & Journal.*  **Exhibit AD** is a true and accurate copy of the text of that article.

137.    In addition, Cory Quinn participated in an interview regarding the State Court Litigation in connection with an article published on October 19, 2023, by the *Lockport Union-Sun & Journal.*  **Exhibit AE** is a true and accurate copy of the text of that article.

138.    Cory Quinn participated in an interview regarding the State Court Litigation in connection with an article published on April 17, 2024 by the *Niagara Gazette.* **Exhibit AF** is a true and accurate copy of the text of that article.

139.    Mr. Quinn participated in another interview regarding the State Court Litigation in connection with an article published on July 6, 2024, by the *Niagara Gazette.* **Exhibit AG** is a true and accurate copy of the text of that article.

140.    Most recently, Mr. Quinn collaborated with Daniel Warmus in the preparation of a video concerning the State Court Litigation and the substance of his Complaint in this action.

29

141.    That video, which lasts more than one hour, was posted to YouTube on December 3, 2025, and is available at the following website last accessed January 9, 2026:  https://www.youtube.com/watch?v=QrUGG8nwKAE&t=907s

142.    **Exhibit AH** is a true and accurate copy of a rough transcript of that video posted to the YouTube channel entitled "Auditing Erie County."

143.    Daniel Warmus, the video's narrator with whom Cory Quinn collaborated on the video, and who interviews Cory Quinn for several minutes, previously pled guilty to a misdemeanor charge of unlawful parading, demonstrating or parading in a Capitol building in connection with his presence and activities inside the United States Capitol on January 6, 2021, before later receiving a pardon from President Donald Trump. **Exhibit AI** is a true and accurate copy of an Affidavit signed May 17, 2021, by a Special Agent with the Federal Bureau of Investigation concerning Mr. Warmus' activities at the Capitol on January 6, 2021.

144.    In the video, Cory Quinn inaccurately claimed that the Town and the ZBA lost their appeals to the Fourth Department in the State Court Litigation.  *See* Ex. AH, p. 5.  In reality, however, the Fourth Department reversed the granting of Haunted Forest's and Tracy A. Quinn's Article 78 causes of action, dismissed all those Article 78 causes of action, and also dismissed their causes of action alleging tortious interference with prospective business opportunities and injury to business reputation because they had failed to serve any notice of claim upon the Town.

145.    Cory Quinn also admitted in the video that the ZBA did issue Haunted Forest a permit to conduct operations at the Site in 2024, even if Cory Quinn, Haunted Forest, or Tracy A. Quinn did not like the conditions imposed upon that permit.  *See* Ex.

AH, p. 5.  Critically, none of them ever commenced a timely CPLR Article 78 proceeding to challenge that permit or the conditions upon which it was granted.

## FIRST DEFENSE

146.    Defendants repeat and reallege the allegations contained in paragraphs 1 through 145 of this Answer with the same force and effect as if fully set forth herein.

147.    Claims under 42 U.S.C. § 1983 are subject to New York's three-year residual statute of limitations for personal injury actions.  *FL v. Hilton Cent. Sch. Dist.*, 2022 WL 1665160, at *2 (W.D.N.Y. May 25, 2022).

148.    Plaintiffs filed the Complaint in this action on October 31, 2025.

149.    Plaintiffs' allegations pertaining to alleged conduct or omissions pre-dating October 31, 2022, are barred by the three-year statute of limitations.

## SECOND DEFENSE

150.    Defendants repeat and reallege the allegations contained in paragraphs 1 through 149 of this Answer with the same force and effect as if fully set forth herein.

151.    Res judicata bars a claim when (1) a previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in a subsequent action were, or could have been, raised in the prior action.  *Murungi v. Mercedes Benz Credit Corp.*, 192 F. Supp. 2d 71, 77 (W.D.N.Y. 2001).

152.    On September 22, 2023, Plaintiffs filed the Petition that commenced the State Court Litigation in Supreme Court, Niagara County.  That Petition asserted causes of action pursuant to CPLR Article 78, as well as plenary causes of action.

31

153. The Appellate Division, Fourth Department, dismissed Plaintiffs' Article 78 causes of action.

154. Plaintiffs did not seek leave to appeal this dismissal to the Court of Appeals.

155. The State Court Litigation was commenced by The Haunted Forests LLC and Tracy A. Quinn, the Plaintiffs herein.

156. The State Court Litigation was brought against the Town and the ZBA.

157. Plaintiffs' claims set forth in the Complaint against the Town and the ZBA in this action could have been brought in the State Court Litigation.

158. The Complaint's claims against the Town and the ZBA must be dismissed, therefore, based on res judicata.

**THIRD DEFENSE**

159. Defendants repeat and reallege the allegations contained in paragraphs 1 through 158 of this Answer with the same force and effect as if fully set forth herein.

160. Res judicata bars claims against defendants who were not named as parties in a previous action but who are in privity with defendants who were named in the previous suit. *See Fonseca v. Columbia Gas Sys., Inc.*, 37 F. Supp. 2d 214, 227 (W.D.N.Y. 1998).

161. The State Court Litigation was brought against the Town and the ZBA.

162. The Individual Defendants, as employees and agents of the Town, are in privity with the Town and the ZBA.

163. Plaintiffs' claims against the Individual Defendants set forth in the Complaint could have been brought in the State Court Litigation.

164. The claims set forth in the Complaint against the Individual Defendants must be dismissed, therefore, based on res judicata.

## FOURTH DEFENSE

165. Defendants repeat and reallege the allegations contained in paragraphs 1 through 164 of this Answer with the same force and effect as if fully set forth herein.

166. Individuals can be held liable under 42 U.S.C. § 1983 only for actions taken under color of law.

167. The Individual Defendants cannot be held liable under 42 U.S.C. § 1983 for actions taken in their personal capacity.

168. To the extent the Complaint alleges actions by the Individual Defendants which were taken in an individual capacity rather than in an official capacity under color of law, Plaintiffs fail to state a claim against the Individual Defendants pursuant to 42 U.S.C. § 1983.

## FIFTH DEFENSE

169. Defendants repeat and reallege the allegations contained in paragraphs 1 through 168 of this Answer with the same force and effect as if fully set forth herein.

170. "[T]here *is no* constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Hellenic Am. Neighborhood Action Cmte. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) (emphasis in original).

33

171.    In the State Court Litigation, Plaintiffs asserted CPLR Article 78 causes of action to challenge the ZBA's May 2023 positive declaration under SEQRA.

172.    Reversing Supreme Court, Niagara County, the Fourth Department dismissed all those CPLR Article 78 causes of action for lack of ripeness.

173.    Any CPLR Article 78 cause of action that would have been available to Haunted Forest or Tracy A. Quinn did ripen, however, when the ZBA issued them the 2024 SUP, subject to conditions.

174.    Haunted Forest and/or Tracy A. Quinn could have challenged the 2024 SUP or its conditions in a timely CPLR Article 78 proceeding within four months after the 2024 SUP was issued.  They failed to do so, however.

175.    Haunted Forest and/or Tracy A. Quinn also could have commenced a timely CPLR Article 78 proceeding to challenge the Town Ethics Commission's December 8, 2023 determination that Travis Evans, John Moley, and Agnes Diane Muscoreil did not violate any ethical standards.  Again, however, they failed to do so.

176.    Simply put, Plaintiffs cannot seek or obtain an award of money damages to remedy claimed violations of their rights under the United States Constitutions, when they failed to pursue timely their available remedies for those alleged violations pursuant to CPLR Article 78.

177.    Plaintiffs fail to state a claim for any remedy under 42 U.S.C. § 1983, because:  (1) their Article 78 causes of action that challenged the ZBA's May 2023 positive declaration was dismissed, and (2) they failed to avail themselves of the remedies afforded by CPLR Article 78 to challenge the 2024 SUP, the conditions to that SUP, or the Ethics Commission's determination made on December 8, 2023.

**SIXTH DEFENSE**

178.    Defendants repeat and reallege the allegations contained in paragraphs 1 through 177 of this Answer with the same force and effect as if fully set forth herein.

179.    To state a claim for a violation of their right to due process of law under 42 U.S.C. § 1983, Plaintiffs needed to allege that they had and were denied a Federally protectable property right to a special use permit, which requires "a demonstration that [they] had a clear entitlement to the permit[.]" *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

180.    Clear entitlement depends on "whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985).

181.    An applicant is clearly entitled to a land use permit only if the discretion of the issuing agency "is so narrowly circumscribed that approval of a proper application is virtually assured." *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989).

182.    The ZBA has broad discretion to issue or deny any special use permit application, pursuant to Town Code § 127-46.

183.    Additionally, under Town Code § 127-46(B), the ZBA has broad discretion to issue a special use permit with any such conditions deemed appropriate to ensure compliance with the purpose and intent of the Town's Zoning Ordinance.

184.    Hence, Plaintiffs cannot allege, and indeed they fail to allege, that there was a certainty or a very strong likelihood that the 2023 Application would have been granted absent an alleged denial of due process of law.

185.   Because they fail to allege deprivation of a Federally protectable property right, Plaintiffs fail to state a claim for violation of due process of law under 42 U.S.C. § 1983.

## SEVENTH DEFENSE

186.   Defendants repeat and reallege the allegations contained in paragraphs 1 through 185 of this Answer with the same force and effect as if fully set forth herein.

187.   Plaintiffs fail adequately to allege that Defendants' claimed actions "occurred under circumstances warranting the labels 'arbitrary' and 'outrageous,'" or so oppressive or conscience-shocking as to constitute a gross abuse of governmental authority. *Natale*, 170 F.3d at 262.

188.   With respect to all of Haunted Forest's special use permit applications, the ZBA strictly followed the special use permit review and approval procedure prescribed by Town Code § 127-46(A), which mandates that the ZBA thoroughly evaluate a number of criteria before it can issue a special use permit.

189.   These criteria include the use and enjoyment of neighboring properties, traffic adequacy and safety, effects on public services and utilities, adequacy of sanitary sewage and storm drainage, and impacts on the appearances of the Town.

190.   Plaintiffs fail to allege that the ZBA did not act in accordance with these criteria when it evaluated Haunted Forest's special use permit applications in juxtaposition with the concerns raised by nearby property owners regarding excessive noise, light, and safety.

191.   Because they fail to allege that Defendants engaged in actions or omissions that were so outrageously arbitrary, oppressive, or conscience-shocking as to

36

constitute a gross abuse of governmental authority, Plaintiffs fail to state a claim for violation of their rights to due process of law under 42 U.S.C. § 1983.

## EIGHTH DEFENSE

192.    Defendants repeat and reallege the allegations contained in paragraphs 1 through 191 of this Answer with the same force and effect as if fully set forth herein.

193.    A positive declaration under SEQRA is not a "final decision" that can be challenged under 42 U.S.C. § 1983.  *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398 (E.D.N.Y. 2008).  *See also Leonard v. Plan. Bd. of the Town of Union Vale*, 659 Fed. App'x 35 (2d Cir. 2016).

194.    The Fourth Department expressly agreed when it dismissed Haunted Forest's and Tracy A. Quinn's original CPLR Article 78 causes of action in the State Court Litigation.

195.    Inasmuch as Plaintiffs rely upon the ZBA's positive declaration, Plaintiffs fail to state a claim for violation of their rights to due process of law under 42 U.S.C. § 1983, because such a claim is unripe.

## NINTH DEFENSE

196.    Defendants repeat and reallege the allegations contained in paragraphs 1 through 195 of this Answer with the same force and effect as if fully set forth herein.

197.    To state a claim for violation of equal protection of the laws under 42 U.S.C. § 1983 based on selective enforcement, Plaintiffs must sufficiently allege that:  (1) Plaintiffs were selectively treated from other similarly situated individuals; and (2) "that such selective treatment was based on impermissible considerations such as race, religion,

37

intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).

198.   Similarly, to state a claim for a violation of Equal Protection under 42 U.S.C. § 1983 based on a "class-of-one" theory, Plaintiffs must allege that:  (1) Plaintiffs were treated differently from another similarly situated comparator; and (2) there is no rational basis for the difference in treatment.  Under a "class-of-one" theory, the level of similarity between Plaintiffs and the persons with whom they compare themselves must be "'extremely high'" such that the comparator is "'*prima facie* identical.'"  *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104-05 (2d Cir. 2005)).

199.   To state a claim for violation of Equal Protection under 42 U.S.C. § 1983, the similarly situated individual must resemble Plaintiffs "'in all material respects.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (citation omitted).

200.   The only alleged comparator identified by Plaintiffs in the Complaint is Erway Christmas Farm.

201.   Erway Christmas Farm has not been the subject of complaints from an adjoining neighbor related to its operations.

202.   In contrast, the ZBA has received multiple complaints regarding Haunted Forest's operations due to impacts on light, noise, and traffic.

203.   Plaintiffs fail to allege a similarly situated comparator who allegedly received more favorable treatment.

204.    Plaintiffs also fail to allege that Defendants harbored impermissible considerations in their dealings with Plaintiffs, or that there was no rational basis for the difference in treatment.

205.    Accordingly, Plaintiffs fail to state a claim for any violation of their rights to equal protection of the laws under 42 U.S.C. § 1983.

**TENTH DEFENSE**

206.    Defendants repeat and reallege the allegations contained in paragraphs 1 through 205 of this Answer with the same force and effect as if fully set forth herein.

207.    To state a claim for First Amendment retaliation, Plaintiffs must allege that:  (1) they have an interest protected by the First Amendment; (2) Defendants' claimed actions were motivated or substantially caused by Plaintiffs' exercise of that right; and (3) Defendants' actions effectively chilled the exercise of Plaintiffs' First Amendment right or caused some other concrete harm.

208.    Plaintiffs fail to allege that Defendants' actions silenced or chilled their speech.

209.    To the contrary, as demonstrated by **Exhibits AC** through **AH**, Haunted Forest's owner Cory Quinn has repeatedly commented on his dealings with the Town and ZBA in interviews with media outlets, and collaborated with Daniel Warmus to prepare a video, posted to YouTube on December 3, 2025, and lasting more than one hour, concerning the State Court Litigation and the subject matter of Plaintiffs' Complaint herein.

210.    Plaintiffs also fail to allege to have suffered any cognizable, concrete harm to support their First Amendment retaliation claim.

211.    The ZBA's issuance of a positive declaration in May 2023 cannot constitute such harm because, as the Fourth Department already determined, a challenge to the positive declaration was unripe.  *See* Ex. AA.

212.    Further, the ZBA issued Haunted Forest a special-use permit on June 25, 2024, pursuant to Haunted Forest's application for the same.  Inasmuch as Haunted Forest or Tracy A. Quinn objected to any conditions imposed upon that permit, they failed to challenge those conditions in a timely CPLR Article 78 proceeding.

213.    And, inasmuch as Haunted Forest or Tracy A. Quinn claim they suffered harm from the Town Ethics Committee's adjudication of Cory Quinn's ethics complaints on December 8, 2023, they had a remedy by way of commencing a timely CPLR Article 78 proceeding, but they failed to do so.

214.    Indeed, Haunted Forest has operated a successful hayride attraction in Clarence, New York, in the fall seasons in 2023, 2024, and 2025.

215.    Having failed to allege any chill on their exercise of their rights under the First Amendment to the United States Constitution, or any other concrete harm that could have been remedied by pursuing a CPLR Article 78 proceeding that they failed to pursue timely against the Town, Plaintiffs fail to state a claim for First Amendment retaliation.

**ELEVENTH DEFENSE**

216.    Defendants repeat and reallege the allegations contained in paragraphs 1 through 215 of this Answer with the same force and effect as if fully set forth herein.

217.    To state a claim for conspiracy under 42 U.S.C. § 1983, Plaintiffs must sufficiently allege there was a "meeting of the minds," meaning that Plaintiffs must provide

40

sufficient details of the time, place, and alleged effects of the conspiracy. *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 439 (W.D.N.Y. 2018).

218. Plaintiffs fail to allege any details — time, place, effect, or otherwise — of Defendants' alleged agreement to deprive Plaintiffs of their constitutional rights.

219. Because their allegations are insufficient to support the requisite meeting of the minds, Plaintiffs fail to state a claim for conspiracy under 42 U.S.C. § 1983.

## TWELFTH DEFENSE

220. Defendants repeat and reallege the allegations contained in paragraphs 1 through 219 of this Answer with the same force and effect as if fully set forth herein.

221. The intra-corporate doctrine bars conspiracy claims against officers, agents, and employees of entities unless those officers, agents, and employees were pursuing personal interests wholly separate and apart from that entity, and "there is no conspiracy if the conduct is essentially a single act by agents of a single entity acting within the scope of their employment." *Warr v. Liberatore*, 270 F. Supp. 3d 637, 651 (W.D.N.Y. 2017); *see also Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013).

222. Defendants consist of the Town and its employees and agents, who are incapable of conspiring together when acting within the scope of their employment.

223. Plaintiffs fail to allege that the Individual Defendants were pursuing personal interests wholly separate and apart from those of the Town.

224. Plaintiffs fail to allege that any meeting of the minds necessary to support a claim of conspiracy between any Defendant and any person who was not an employee or an elected or appointed official of the Town.

225.    Accordingly, Plaintiffs' claim for conspiracy under 42 U.S.C. § 1983 is barred by the intra-corporate conspiracy doctrine.

### THIRTEENTH DEFENSE

226.    Defendants repeat and reallege the allegations contained in paragraphs 1 through 225 of this Answer with the same force and effect as if fully set forth herein.

227.    A claim for conspiracy under 42 U.S.C. § 1983 is cognizable only when there is an underlying constitutional violation.  *See Wik v. Village of Holley*, 2023 WL 6958794, at *7 (W.D.N.Y. Oct. 20, 2023); *Clark v. City of Oswego*, 2007 WL 925724, at *7 (N.D.N.Y. 2007).

228.    Plaintiffs' claim for conspiracy under 42 U.S.C. § 1983 fails as a matter of law because Plaintiffs fail to demonstrate an underlying violation of Plaintiffs' rights under the United States Constitution.

### FOURTEENTH DEFENSE

229.    Defendants repeat and reallege the allegations contained in paragraphs 1 through 228 of this Answer with the same force and effect as if fully set forth herein.

230.    To the extent that Defendants become aware of further defenses after service of this Answer as a result of its investigation, discovery, or otherwise, they hereby reserve all rights to amend this Answer to assert such further defenses.

WHEREFORE, Defendants respectfully request that this Court enter an Order and Judgment denying and/or dismissing the Verified Complaint in its entirety; and awarding Defendants the costs and attorneys' fees they will have incurred to litigate this action and proceeding, and such other and further relief as this Court deems proper and just.

Dated:  Buffalo, New York
       January 9, 2026

PHILLIPS LYTLE LLP


By: /s/ Craig R. Bucki_____
    Craig R. Bucki
    Emma P. Murphy
One Canalside, 125 Main Street
Buffalo, New York  14203-2887
Telephone No. (716) 847-8400
cbucki@phillipslytle.com
emurphy@phillipslytle.com


NAPIERSKI, VANDENBURGH,
NAPIERSKI & O'CONNOR, L.L.P.


By: /s/ Shawn F. Brousseau_____
    Shawn F. Brousseau
296 Washington Avenue Extension, Suite 3
Albany, New York  12203
Telephone No. (518) 862-9292
sfb@nvnolaw.com

Attorneys for Defendants
*Town of Wilson, NY; Town of Wilson Zoning Board of Appeals; Travis Evans; Doyle Phillips; Robert Hull; Agnes Diane Muscoreil; John Moley; Estate of James V. Muscoreil; and Mark Schmitkons*

## **VERIFICATION**

I, WILLIAM ANTHONY EVANS, affirm this 9th day of January, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that I am the Supervisor of the Town of Wilson, New York, a municipal corporation organized under the laws of the State of New York; that the Town of Wilson, New York, is a Defendant herein; that I have read the foregoing Verified Answer and know the contents thereof; that the Verified Answer is true, except as to matters alleged on information and belief and as to those matters I believe it to be true; that I understand that this document may be filed in an action or proceeding in a court of law; and that the reason I make this Verification is that all the Defendants in *The Haunted Forests LLC et ano. v. Town of Wilson, NY, et al.* (W.D.N.Y. Case No. 1:25-cv-01124-LJV) are united in interest and pleading together.

1/9/2026                                        WILLIAM ANTHONY EVANS