**Q**

TOWN OF WILSON ZONING BOARD OF APPEALS

Monday, May 24th, 2023

The Town of Wilson Zoning Board of Appeals meeting was called to order at the Wilson Town Hall at 7:00 pm by Chairman John Sinclair with the pledge to the flag.

Members present: John Sinclair, Corey Harmon, Robin Mignella, Amy Wiltse, Diane Muscoreil (clerk) Excused: Brian Peck

Also present: Kyle Andrews, Attorney for the Town; Justin Andreozzi – Attorney for Haunted Forest LLC

The minutes of the April 26th, 2023, ZBA meeting were reviewed and approved as corrected on a motion by Robin Mignelle, seconded by Corey Harmon and unanimously carried.

---

**WILSON HARBOR PLACE SPECIAL USE PERMIT:** This is a joint Village/Town project with area variances, special use permit updates & site plan review process at 61&77 Harbor Street.

Status Update: They are requesting two new variances, renewal, and update of 4 previously granted variances due to date expiration and re-issuances of special use permit due to expiration from non-action. Additionally, as part of the SEQR process as well as the site plan approval process, the Town of Wilson ZBA hereby declare themselves lead agency going forward for this combined project. The board is calling for a coordinated review and asking for all relevant agencies' input prior to starting the SEQR process. No funding is being granted from the Niagara County IDA or NYS Agencies for the project.

**CARRIED:** A motion was made by Amy Wiltse, seconded by Robin Mignella, and unanimously approved that the request be tabled until the letters are sent out and feedback received from the agencies.

**SPECIAL PERMIT RENEWAL – 4430 CHESTNUT ROAD, WILSON, NY – MELISSA KOSER-SZCZEPANSKI**

A Special Use Permit to operate a commercial horse boarding facility pursuant to Sections 127-26, 127-41.1 and 127-46 of the Town of Wilson Code. No changes to the operation have been made to the operation since the permit was first issued in December 2006. The owner's information has been updated from the prior owner. The request was opened to public discussion with no comments.

**CARRIED:** A motion made by Robin Mignella, seconded by John Moley and unanimously carried to renew the permit for a commercial horse boarding facility at 4430 Chestnut Road for a period of ten years was carried unanimously.

**SPECIAL PERMIT RENEWAL – 2778 YOUNGSTOWN LOCKPORT ROAD – BRIAN MONAHAN**

A Special Use Permit to operate a retail vegetable fruit and flower stand pursuant to 127-26,127-41.1 and 127-46 of the Town of Wilson Code. The permit was originally issued in October of 2008. The only changes reported were the improvement of parking by a drive around.  The request was opened to public discussion with no comments. Updates to the owner information will be updated.

**CARRIED:** A motion made by Robin Mignella, seconded by Corey Harmon that the application of Brian Monahan to renew his Special Use Permit to operate a retail vegetable, fruit and flower stand be renewed for a period of ten years was carried unanimously.

**SPECIAL PERMIT RENEWAL – 612 LAKE STREET, WILSON, NY – HENRY CONNOR**

A Special Use Permit for a 150-foot cellular tower pursuant to Section 127-38B of the Town of Wilson Code. The applicant was asked to provide the information from his lessee to supply updated information on the following restrictions and conditions that must be met: The applicant was in attendance.

#4 – permittee shall provide the Town of Wilson with proof of liability of insurance acceptable to the Town of at least one million dollars with the Town listed as co-insured.

#5 – permittee shall provide a surety bond issued by a surety company listed in the State of NY and acceptable to the Town of Wilson in the sum of $100,000 in favor of the Town of Wilson to cover the cost of removal of the permittee's default in the removal of the same, with an indeterminate term.

**Town of Wilson Zoning Board of Appeals**    May 24th, 2023    Page 2

**612 LAKE STREET SPECIAL PERMIT RENEWAL CONTINUED:**

**CARRIED:** A motion was made by Robin Mignella, seconded by John Moley, to table the renewal of the permit until that information listed is received or if the property owner's lessee wishes to apply directly for the renewal was carried unanimously.

**SPECIAL PERMIT RENEWAL – 3307 YOUNGSTOWN LOCKPORT ROAD – GLORIA WILLIAMS**

A Special Use Permit to operate a beauty shop in her home, pursuant to Sections 127-26, and 127-46 of the Town of Wilson Code.

The applicant was not available for this meeting. The request was opened to public discussion with no comments.

**CARRIED:** A motion was made by Robin Mignella, seconded by Corey Harmon to renew the request of Gloria Williams to operate a beauty shop at 3307 Youngstown Lockport Road for a period of 10 years and unanimously approved.

## SPECIAL USE PERMIT REVOCATION – 4335 Wilson Burt Road – Ronald Schearer

The permit holder has requested the permit be removed as he is no longer looking to renew the special permit for the running of a fruit stand.

## SPECIAL USE PERMIT – 4127 CHESTNUT ROAD – KAREN JOWLY – COMMERCIAL KITCHEN – RR200

The applicant presented a plan for catering company mostly pickup and drop off and baby food as well. She reported it will be located in the garage. Most of the food will be dropped off by owners. The Planning Board letter was reviewed, and they issued a positive recommendation. The request was opened to public comments, none were made. The Chairman read SEQR Part 1. SEQR Part 2 and SEQR Part 3 were completed. A Negative Declaration was made and approved unanimously.

**CARRIED:** A motion was made by Robin Mignella, seconded by Corey Harmon to approve the request for a Special Use Permit with the following conditions for a period of one year, and unanimously carried.

1. All annual fire/safety inspections required by the Town CEO must be complied with.
2. If any conditions required by the CEO are not addressed within 14 days, the CEO is given the authority to suspend this permit until the owner appears before this board to show cause or compliance. A hearing will be held to determine if the permit is reinstated or revoked.
3. Based on the Planning Board recommendation, all food is not to be picked up by customers but delivered by the owner.
4. Nor large delivery trucks, 18 wheelers/tractor trailer size
5. No Customer Parking
6. Comply with all Town, County and State Codes, including the Health Department.

## AREA VARIANCE REQUEST – 2310 CLEVELAND DRIVE – RUSSELL BURR – LOCATED IN UR100

The applicant is asking for a setback of 10 feet to be in line with other homes instead of the required 45 foot setback. Mr. Burr reported he wanted to change his request to 15 feet after speaking with the Planning Board. There is a draining swail at the location of the onsite sewage disposal system. He would rotate the layout as a solution that considers all issues with the least negative impact to the community.

The Planning Board recommendation was positive for a 15-foot setback due to the issues. Chairman Sinclair read the requirements for granting a variance. The board had no questions for the applicant. Mr. Moley stated that the request is consistent with the area. The request was opened to public comment and no one spoke. The Chairman read SEQR Part 1 and completed SEQR Parts 2 & 3.  A Negative Declaration was made.

A motion was made by Robin Mignella, seconded by John Moley and unanimously carried to approve the Area Variance request with the following conditions:

1. A 15-foot setback from the ROW.
2. All Niagara County requirements for a septic system be followed.

**Town of Wilson Zoning Board of Appeals**      May 24th, 2023                                      Page 3

### SPECIAL USE PERMIT – 2860 BEEBE ROAD   HAUNTED FORESTS LLC

A Special Use Permit application for a haunted hayride and associated attractions per Town of Wilson Code 127-11(D)(14)

The application has been untabled from the last meeting in April and some additional information has been received by the board. Some unanswered questions from last month – do we have an opening date? Sept. 15th – Oct. 29th, Friday, Saturday and Sundays (only in October). Mr. Andrews reported that we received a letter of intention for the lease of the property, and thirteen letters were received and will be added to the packet. Justin has more letters for the board and presented a check for $210.00 for the permit fee. He would like to invite the neighbors to meet with the actors, relax and take the unknown out of the event. They are also offering a $250 stipend for blackout curtains to the neighbors to avoid the lights from the events from shining in their windows.

Robin asked about the Haunted Barn and was told it will not be in use this year with the Haunted Forest. There will only be the corn maze and haunted hayride, which will take place on the back end of the property. She received answers on the porta john locations and was told they are to be located centrally on the property. She asked about the stage that was used last year, and was told it was used for announcements, and there is nothing currently planned for the stage. Last year a dance troupe did perform on the stage who performed routines for 3 minutes 2 or 3 times a night. There are two water faucets on site.

Amy Wiltse asked for a definition of the Haunted Forests. The farm is a separate unit for the planting of Xmas trees, pumpkins and corn and is not part of the Haunted Forest Business Plan, but it is still being worked out as to the specifics of the lease.

Robin asked about the start and stop times. Justin reported they will stop selling at 10:00 pm and be closed at 11:00 pm. Justin reported that no citations were issued for the operation being open past 11:00 and if there is an issue with non-compliance it will be handled by the CEO. A letter from the parking lot attendant reported that he had no issues with traffic and/or parking last year. Amy feels there is a definite issue with the traffic and asked about an exit road on Shadigee Road.  Amy asked what can be done to relieve those issues. She is not blaming the Haunted Forests but is looking for solutions.  Justin spoke on the shuttle service offered last year to try and reduce the number of vehicles that show up. Corey Quinn offered to add an additional parking attendant.

Anyone who was not here at the last meeting will be allowed to give public input.

Within ½ mile

Joe Grenga, 2915 Beebe -  Original time of last run was not kept, they are noisy, the employees stay and hoot and holler, traffic is almost scary, rocks thrown, attendant leaves, this is a farmland, not an amusement park. Solutions promised were not kept, they do what they want after agreeing to

Steve Quinn – 4801 Shadigee – My parents are there cleaning up their farm, they can do whatever they want after 11:00, it's their land! He can run a tractor to move things, that's his god=given right. There may be a few stragglers, but there is a great economic impact, patronizing businesses in Town, many jobs, taxes paid. People are relying on these jobs and saying that they are breaking the rules is just not right.

Traci Quinn –I  can't hear anything going on, I'm cleaning up! Neighbors said she can't hear  it half of the time.

2198 Ide Rod – husband is a Veteran with PTSD, we also have dogs, and the noise really bothers him and the dogs. We cannot use our backyard on weekends  for the whole fall season.   .

One Mile

Thomas Flynn Lockport employee - shut down on time, enjoy interacting with people, I didn't hear any late-night noises, sometimes employees stay around a bonfire afterwards, but do not make noise, they are just having a good time.

Tammy, Cheektowaga, employee – I have autism, they have provided everything I need to come out of my shell and interact with the people who attend I hope it stays open.

4646 Ide Road across from Nuclear Alloy– I don't hear any noise, they are out of there at 11:00, the traffic on Ide is worse than Beebe. I worked there last year, the best job I ever had. They make us follow the rules, I don't lie for anybody.

**Town of Wilson Zoning Board of Appeals**        May 24th, 2023                                    Page 4

Pet, Lockport – Employee, one of the scarers. We often break character to reassure the kids, we all get along fine.

Tonawanda – My sons work there, I'm there every night to bring my kids home.  Safety is first. Substantiate all reports, I never heard any shots. I appreciated the porta john question also. Safety expert.

Joanne Rupert-Frawley – Wilson Were false reports filed? Becker Farms had issues when they first opened, and these people are trying to build a business, create community – understand the plight between neighbors.

Paul Hermann – Beebe Road Neighbor ~ Two years in a row I've lived with this, they blame neighbors but there are screams, yelling, blasting music, constant harassment and lies. Then they added a stage with loud music, I lock myself in the house, close all the windows.

Steve Quinn Sr. – We raised race horses, Covid hurt us badly, and so we decided to try to start something new to produce income and help the farm grow. The aggravation, stress, anxiety put me in the hospital. Not an owner anymore, not part of the business anymore. Try to work it out!

Cicatelli, Pendleton – I've known Corey for years, he's employing a lot of people, looking for solutions, service to the community, trying to make his business grow.  Get together, keep this going, work out the issues, great for the community.

McNamara, N. Tonawanda ~ Supported the business from the beginning. Brought kids hockey teams, 5th – 9th graders, served an entertainment purpose different from others. They loved it.

Tim, West Seneca ~ Employee. We complied with all the rules, screams and hollers are all part of the Halloween event. They always stop at 11:00, I would hate to see it go away.

Corey Quinn, Grand Island ~ 1st year I was the tour guide, 2nd year up front, parking lot, radio. We have compromised. Shutting us down is not a compromise.  We're closing the barn, have the right to use the farm. We need to sit and talk this over. No tickets are sold after 10pm. We did have some hangers-on after 11:00- cleanup crews. Don't Cancel Halloween! We serve ages 3 – 60.

Jim Hibbard – 2443 Lake Road  Someone was talking about characters, and I have some comments on that. The Quinn's are bad characters – they sued me, a fellow insurance agent, they stole all my signs, and shut down my business. It's a public record.

Charles Quinn – Niagara Falls  Complaints about noise, you need to get a meter to verify measured noise!

The Chairman closed public participation.

Justin  – Stay relevant! RR200 fits the business, request is reasonable. No citations were issued.  I loved that you started your meeting with the Pledge to the Flag – I haven't been in a court room or a meeting that says the pledge before a meeting!  – Life, Liberty, Pursuit of Happiness. Owners have property rights, allowable. Zoning laws tell you what you are allowed to do in a district.  Steve's horses lost money after Covid, so he shifted gears, but figured out another way to promote a rural atmosphere.

The Chairman asked if Steve Quinn is done with the business.He was told that the current owners/operators of the Haunted Forests are Robert McNamara, Justin Quinn and Corey Quinn.

Chairman Sinclair read SEQR Part 1 submitted by the applicants and signed at the last meeting by their attorney.

Chairman Sinclair declared the Town of Wilson ZBA as lead agency and completed Part 2 of SEQR.

SEQR Part 3 – the board discussed the impact from these areas, how it will be significant, and probability of occurring, durations, setting and scope and magnitude. Short or long-term and cumulative impacts.

 Questions 2, 3, and 5 were determined to be "moderate to large"as follows:

**Town of Wilson Zoning Board of Appeals**      May 24th, 2023                                         Page 5

#2 – There may be a moderate to significant change in the intensity of use of the land during the time of the attraction that changes the nature of how the land is being used. It is not being used in either a residential or agricultural nature but rather hundreds of people are parking and transiting the land. Design measures to limit population have thus far over the last two years been unsuccessful. These included limiting ticket sales and spreading out ride times. It seems applicants cannot control the number of customers coming into the land and thus impacts the use of the land. It has occurred multiple times in the past. This appears to be a short-term impact during operation of the ride/attraction only.

#3 – Moderate to Large – The change to the quality of the existing community may be significant when the ride/attraction is running. It changes the quiet residential area into a carnival like neighborhood with commercial levels of traffic, parking, lights and noise that would not ordinarily be present. This has been determined through evidence submitted from public testimony, code officer reports and observations. The design measures offered  thus far have failed to adequately address this of the past two years. These included inadequate fencing, inadequate light reduction methods, later operating times. This impact has a likely chance of recurring. It is a short-term impact during the operation of the ride/attractions, but long-term change to the community is possible due to physical appearance changes from the current residential and farm land to a more commercial appearance.

#5 – Moderate to Large – The change to existing levels of traffic seems to be moderate to significant on operating nights of the ride attraction. The design measures offered for reduction of and addressing of traffic issues including staff to assist with parking vehicles as well as the running of a shuttle bus has not fully addressed the traffic safety concerns. It did improve from year 1 to year 2 with the addition of the shuttle, however, there seems to still be significant potential for accidents due to lack of turning are or off road lead in areas to parking lot, prevently people from quickly getting off the road. The probability of recurrence is high, and the impact is short term, only whilce the ride/attraction is operating.

 Because of these issues, an Environmental Impact Statement must be prepared.

A motion was made by Robin Mignella, seconded by Corey Harmon to table the request for the Special Use Permit until the EIS is prepared, and comments received from agencies contacted. The motion was unanimously carried. Necessary information will be forwarded to the attorney for Haunted Forests LLC as soon as practicable.

A motion to adjourn was made by Robin Mignella, seconded by Amy Wiltse and unanimously carried at 9:20 pm.

                                        Respectfully submitted,

                                        A. Diane Muscoreil

                                        Town Clerk