# R

Case 1:25-cv-01124-LJV-MJR    Document 9-18    Filed 01/09/26    Page 2 of 7

# KYLE R. ANDREWS
### ATTORNEY AT LAW

June 7, 2023

Justin J. Andreozzi
9145 Main Street
Clarence, NY 14031

      **RE:**   **Applicant:**   **Haunted Forests LLC**
                **Address:**   **2860 Beebe Road, Newfane, NY 14108 (Town of Wilson)**

Dear Justin:

      This letter serves as notification of State Environmental Quality Review ("SEQR") positive declaration for the above referenced project following the May 24, 2023 meeting of the Wilson Zoning Board of Appeals.  The most pertinent details are as follows:

| | |
|---|---|
| Lead Agency: | Town of Wilson Zoning Board of Appeals<br>375 Lake Street<br>Wilson, New York 14172 |
| Contacts: | Kyle R. Andrews<br>Town Attorney<br>4810 Wilson Burt Road<br>Wilson, New York<br>716-870-7043 |
| | John Sinclair<br>Chairman, Zoning Board of Appels<br>375 Lake Street<br>Wilson, New York 14172<br>716-550-2131 |
| Action: | Positive declarations relative to potential changes involving intensity of use of land, character to community and traffic levels affecting existing conditions. |

      Attached to this letter is the signed Short Environmental Assessment Form Part 2 – Impact Assessment, Short Environmental Assessment Form Part 3 – Determination of Significance and a brief summary from the Zoning Board Chairman as to areas of concern leading to the positive declaration.

R0268

Case 1:25-cv-01124-LJV-MJR    Document 9-18    Filed 01/09/26    Page 3 of 7

The finding of a positive declaration results in the need for further action on the part of your client should they wish to continue with the SEQR process. For simplification purposes, and so that the Town and your client are the same page, I summarize the general process below:

1. The applicant must submit a draft scoping document in accordance with 6 NYCRR Part 617.8 (b).

2. Once a draft scoping document is submitted, public and agency input is sought (typically have a scoping hearing).

3. After input is provided, the Lead Agency must issue a final scoping document in accordance with 6 NYCRR Part 617.8 (e).

4. The applicant then prepares a Draft Environmental Impact Statement ("DEIS") in accordance with Section 6 NYCRR Part 617.9 and the scoping document.

5. Once the applicant submits the draft of the DEIS, the Lead Agency and any required consultants will review this draft based on the scoping document for completeness.

6. Once the Lead Agency determines the DEIS is complete, the Lead Agency will set a public hearing and authorize distribution to other agencies. The Lead Agency and its consultants will then begin their formal review of the document. This formal review will result in questions and comments on the DEIS.

7. The Lead Agency will also receive input from the public at the public hearing and from agencies.

8. The Lead Agency, with assistance from its consultants, will document the substantive comments that are received and determine how they should be addressed in the Final Environmental Impact Statement ("FEIS"). All comments from agencies should be addressed, but the Lead Agency can determine that some of the public comments are not substantive.

9. The Lead Agency, its consultants and the applicant will then need to make a decision – who will complete the FEIS. It can be drafted by the applicant and then revised by the Lead Agency and its consultants, or the Lead Agency and its consultants can just complete the FEIS. In either case, the Lead Agency is responsible for the contents of the FEIS.

10. Once the FEIS is completed and accepted by the Lead Agency, the Lead Agency and its consultants will need to generate and issue the SEQR Findings. The SEQR Findings will document the process, finalize mitigations and other conditions, and determine if the project's impacts have been mitigated to the maximum extent practicable.

11. If a Positive SEQR Findings are made, the project can proceed with other regulatory approvals.

4810 Wilson Burt Road, Wilson, New York 14172· 716-870-7043
kyleandrews2010@hotmail.com

R0269

FILED: NIAGARA COUNTY CLERK 06/28/2024 11:46 PM
NYSCEF DOC. NO. 76

INDEX NO. E181144/2023

RECEIVED NYSCEF: 06/28/2024

Kindly advise the undersigned once you have had a chance to review the same with your client and make a determination whether the SEQR process will continue as outlined.  As always, feel free to contact me at anytime.

Very truly yours,

Kyle R. Andrews
Town Attorney

Cc:    Wilson Town Clerk
        Wilson Zoning Board of Appeals

4810 Wilson Burt Road, Wilson, New York 14172· 716-870-7043
kyleandrews2010@hotmail.com

R0270

Case 1:25-cv-01124-LJV-MJR    Document 9-18    Filed 01/09/26    Page 5 of 7

| | Project: | |
|---|---|---|
| | Date: | |

## Short Environmental Assessment Form
### Part 2 - Impact Assessment

**Part 2 is to be completed by the Lead Agency**

Answer all of the following questions in Part 2 using the information contained in Part 1 and other materials submitted by the project sponsor or otherwise available to the reviewer. When answering the questions the reviewer should be guided by the concept "Have my responses been reasonable considering the scale and context of the proposed action?"

| | | No, or small impact may occur | Moderate to large impact may occur |
|---|---|:---:|:---:|
| 1. | Will the proposed action create a material conflict with an adopted land use plan or zoning regulations? | ✔ | ☐ |
| 2. | Will the proposed action result in a change in the use or intensity of use of land? | ☐ | ✔ |
| 3. | Will the proposed action impair the character or quality of the existing community? | ☐ | ✔ |
| 4. | Will the proposed action have an impact on the environmental characteristics that caused the establishment of a Critical Environmental Area (CEA)? | ✔ | ☐ |
| 5. | Will the proposed action result in an adverse change in the existing level of traffic or affect existing infrastructure for mass transit, biking or walkway? | ☐ | ✔ |
| 6. | Will the proposed action cause an increase in the use of energy and it fails to incorporate reasonably available energy conservation or renewable energy opportunities? | ✔ | ☐ |
| 7. | Will the proposed action impact existing<br>a. public / private water supplies? | ✔ | ☐ |
| | b. public / private wastewater treatment utilities? | ✔ | ☐ |
| 8. | Will the proposed action impair the character or quality of important historic, archaeological, architectural or aesthetic resources? | ✔ | ☐ |
| 9. | Will the proposed action result in an adverse change to natural resources (e.g., wetlands, waterbodies, groundwater, air quality, flora and fauna)? | ✔ | ☐ |
| 10. | Will the proposed action result in an increase in the potential for erosion, flooding or drainage problems? | ✔ | ☐ |
| 11. | Will the proposed action create a hazard to environmental resources or human health? | ✔ | ☐ |

PRINT FORM

SEAF 2019

R0271

Case 1:25-cv-01124-LJV-MJR   Document 9-18   Filed 01/09/26   Page 6 of 7

## Short Environmental Assessment Form
### Part 3 Determination of Significance

For every question in Part 2 that was answered "moderate to large impact may occur", or if there is a need to explain why a particular element of the proposed action may or will not result in a significant adverse environmental impact, please complete Part 3. Part 3 should, in sufficient detail, identify the impact, including any measures or design elements that have been included by the project sponsor to avoid or reduce impacts. Part 3 should also explain how the lead agency determined that the impact may or will not be significant. Each potential impact should be assessed considering its setting, probability of occurring, duration, irreversibility, geographic scope and magnitude. Also consider the potential for short-term, long-term and cumulative impacts.

#2 - moderate to large - There may be a moderate to signficant change in the intensity of use of the land during the time of the attraction changes the nature of how the land is being used. It is not being used in either a residential or agricultural nature but rather hundreds of people are parking and transiting the land. Design measures to limit population have thus far over last two years been unsuccessful. These included limiting of ticket sales and spreading out ride times. It seems applicant cannot control the amount of customers coming into the land and thus impacts the use of the land. It has occured multiple times in the past. This appears to be a short term impact during operation of the ride/attraction only.

#3 - moderate to large - The change to the quality of the existing community may be signifcant when the ride/attraction is running. It changes the quiet residential area into a carnival like neighborhood with commercial levels of traffic, parking, lights and noise that would ordinarily not be present. This has been determined through evidence submitted from public testimony, code officer reports and observations. The design measures offered thus far have failed to adequately address this over the past two years. These included inadequate fencing, inadequate light reduction methods, later operating times. This impact has a likely chance of recurring. It is a short term impact during the operation of the ride/attractions, but long term change to the community is possible due to physical appearance changes from the current residential and farm land, to a more commercial appearance.

#5 - moderate to large - The change to existing levels of traffic seems to be moderate to significant on operating nights of the ride/attraction. The design measures offered for reduction of and addressing of traffic issues including staff to assist with parking vehicles as well as the running of a shuttle bus has not fully addressed the traffic safety concerns. It did improve from year 1 to 2 with the addition of the shuttle, however there seems to be still significant (see attached)

☑ Check this box if you have determined, based on the information and analysis above, and any supporting documentation, that the proposed action may result in one or more potentially large or significant adverse impacts and an environmental impact statement is required.

☐ Check this box if you have determined, based on the information and analysis above, and any supporting documentation, that the proposed action will not result in any significant adverse environmental impacts.

| Town of Wilson Zoning Board of Appeals | 5/24/2023 |
|---|---|
| Name of Lead Agency | Date |
| John Sinclair | Chairman - Town of Wilson Zoning Board of Appeals |
| Print or Type Name of Responsible Officer in Lead Agency | Title of Responsible Officer |
| Signature of Responsible Officer in Lead Agency | Signature of Preparer (if different from Responsible Officer) |

**PRINT FORM**

Page 2 of 2

R0272

Potential for accidents due to lack of turning area or off road lead in areas to parking lot preventing people from quickly getting off the road. The probability of recurrence is high and the impact is short term, only while the ride/attraction are operating.

R0273