Z

RECEIVED

JUN 27 2024

TOWN OF WILSON

Town of Wilson Zoning Board of Appeals

Resolution No. ZBA 1-2024

<u>Resolution to Issue Determination regarding a Special Permit Renewal Application by Tracy Quinn and Haunted Forest LLC to operate a haunted hay ride and corn maze together with other proposed agricultural tourism related activities at 2860 Beebe Road</u>

WHEREAS, Section 127-11(D)(14) of the Zoning Ordinance of the Town of Wilson ("**Zoning Ordinance**") permits "*Agricultural tourism related activities. On-farm recreational activities such as hayrides, petting zoo, harvest festivals, and cornfield mazes that contribute to the production and marketing of crops, livestock or livestock products*" by special use permit in the Town's Rural Residential 200 District ("**RR 200 District**"); and

WHEREAS, the Town of Wilson Zoning Board of Appeals ("**ZBA**") previously granted to Tracy Quinn and Haunted Forest LLC ("**Haunted Forest**" or "**Applicants**") a special use permit dated August 25, 2021, as renewed by a special use permit dated July 22, 2022, which authorized the operation of an agricultural tourism related use for approximately 18 days annually during the Fall season in each of those years, including a haunted hayride, corn maze, farmer's market and other agricultural tourism related activities (the "**Special Use**") at 2860 Beebe Road ("**Site**") in the RR 200 District; and

WHEREAS, Haunted Forest submitted a special use permit renewal application to the ZBA dated December 15, 2022 to request continued operation of the Special Use at the Site during the Fall 2023 season, together with a description of the Special Use to explain more particularly that it would include: parking for 110 vehicles; the cultivation of Christmas trees on up to 7 acres, 2 acres of pumpkins, and 4 acres of corn and log timber pursuant to a comprehensive farm plan to be developed with the Niagara County Co Op.; the operation of a hayride with 2-4 trips per operating hour with 50-60 participants per ride; a corn maze for recreation and to promote sweet corn sales; and a farmer's market with other local vendors; and the Applicants clarified that the "Haunted Barn" would not be open for the 2023 season (the "**2023 Renewal Application**"); and

WHEREAS, the ZBA determined that the Special Use had the potential for significant adverse impacts to the environment around the Site and therefore determined that further review of the 2023 Renewal Application and additional environmental analysis would be required pursuant to the State Environmental Quality Review Act ("**SEQRA**") before the ZBA could issue its determination on the 2023 Renewal Application; and

WHEREAS, the Applicants, apparently, disagreed with the ZBA's determination and commenced a proceeding in Niagara County Supreme Court, Index No.: E181144/2023,

1

*Haunted Forest LLC and Tracy A. Quinn v. Town of Wilson and Town of Wilson ZBA* (the "**Court Action**") to request a judicial determination that the 2023 Renewal Application was exempt from further SEQRA review and to request that the ZBA grant the 2023 Renewal Application; and

WHEREAS, the Court Action remains pending, but notwithstanding the Applicant has requested that the ZBA proceed with its review of the Special Use and issue a special permit renewal to authorize the Special Use at the Site during the Fall 2024 season, and the Applicant further requested that the ZBA treat the 2023 Renewal Application as if it were dated to conduct the Special Use at the Site for the 2024 season, and further requested that the ZBA grant a renewal period of 10 years (the "**2024 Renewal Application**");

WHEREAS, Zoning Ordinance Section 127-48(E) and Section 127-52 require the Planning Board to submit an advisory opinion on the 2024 Renewal Application, and the ZBA so referred the 2024 Renewal Application to the Planning Board for such advisory opinion; and

WHEREAS, the Planning Board held a meeting on June 17, 2024 to consider the 2024 Renewal Application and hear comments from the public and from the Code Enforcement Officer on the Special Use, including public comments that expressed concerns stemming from prior operations of the Special Use at the Site including a lack of compliance with conditions to prior permits, insufficient fencing, disruptive noise, vehicle and traffic congestion, light pollution to neighboring properties from vehicle headlights at the Site, and a lack of any farm activities being conducted on Site that would warrant the issuance of a special permit to conduct agricultural related tourism activities consistent with Zoning Ordinance 127-11(D)(14); and

WHEREAS, the Planning Board found that the Special Use would not be consistent with the RR200 District's purpose, the Special Use has not complied with all conditions of its previous approvals, and the Special Use would detract materially from the use or enjoyment of neighboring properties by generating noise, light, or traffic conditions that adversely affect the neighborhood, and accordingly the Planning Board issued Resolution No.1-2024 to recommend that the ZBA deny the 2024 Renewal Application (the "**Planning Board Recommendation**"); and

WHEREAS, the ZBA has considered the Planning Board Recommendation together with the public comments and draft meeting minutes made available from the Planning Board's June 17, 2024 meeting; and fully reviewed the materials designated by the Applicant as the 2024 Renewal Application; and further reviewed meeting minutes from prior relevant ZBA meetings, including those held on May 24, 2023; April 26, 2023; June 27, 2022; and March 28, 2022 to discuss the Special Use at the Site and hear public

2

comments thereon; together with the Code Enforcement Officer Report with observations regarding the operation of the Special Use at the Site during 2022, and as updated with additional materials dated June 25, 2024; together with other relevant materials and sections of the Zoning Ordinance, including Section 127-11, which describes the general purpose of RR200 District as intended to promote agricultural activities, a rural atmosphere, and family-oriented facilities, such as places of worship or learning and recreational or other activities requiring open space; and

WHEREAS, pursuant to Code Section 127-48(D), the ZBA noticed and conducted a public hearing on the 2024 Renewal Application at the ZBA's June 25, 2024 meeting, and at that time the ZBA discussed the foregoing materials and considered the presentation by the Applicants' counsel and the public comments on the Special Use; and

WHEREAS, the ZBA fully considered the Special Use and the 2024 Renewal Application at its meeting on June 25, 2024, including the following specific points of discussion: The need for traffic control and safety on Beebe Road, particularly when vehicles enter and exit the Site in high volume between hay rides; the need to limit light pollution to adjoining residences from the attractions on Site and from vehicle headlights; the need to control sound pollution like loud and repetitive theme music, or scare sounds such as screams, gunshots, and chainsaw-style effects; neighbor concerns that the Special Use was disruptive to the neighborhood during the 2021 and 2022 seasons by way of noise, light, and traffic; and whether the Applicants had provided sufficient information for the ZBA to understand the extent of farming operations that occur on Site; and

WHEREAS, the ZBA received correspondence from the Applicants dated June 24, 2024, in which the Applicants alleged they had determined that the Special Use could not operate at the Site during the 2024 season because the Applicants purported they lacked sufficient time to adequately prepare for operations, but that Applicants nevertheless requested the ZBA proceed to a determination on the 2024 Renewal Application and its request for permission to operate over the next ten years; and

WHEREAS, the ZBA has further considered that Zoning Ordinance Section 127-46(A) requires the ZBA to make the below findings in order to grant a special permit or renewal:

1. Consistent with purpose. The proposed special permit is consistent with the general purposes of this chapter and any additional statement of purpose applying to the particular request.
2. Specific requirements met. All specific requirements relating to the special permit are complied with.

3

3. Neighboring properties protected. The proposed action will not detract materially from the use or enjoyment of neighboring property.
4. Traffic adequacy. The streets serving the use are adequate for the traffic generated by the use and that conditions of traffic will not be created that will adversely affect the neighborhood.
5. Traffic safety. Adequate provision is made for the safety of motorists and pedestrians.
6. Effect of utilities and services. The proposed change will have no adverse effect on the logical, efficient and economical provision of public services and utilities.
7. Provisions for sanitary sewage and storm drainage. Adequate provisions are made for the treatment of sanitary sewage and the handling of storm runoff.
8. Town appearance. The effect of the proposed change on the appearances of the Town will not be deleterious (the "**Findings**"); and

WHEREAS, in order to make the required Findings, the ZBA reviewed and considered the Planning Board discussion and public comments made at the June 17, 2024 meeting, which indicated that the Special Use as conducted at the Site in 2021 and 2022 resulted in complaints and concerns from nearby land users with regard to the Special Use's propensity to add noise, traffic, and light pollution to the area around the Site in a manner that could be inconsistent with the purposes of the RR200 District and was otherwise disruptive to surrounding land uses, and further indicated that the Special Use had failed comply with conditions to its 2021 and 2022 special permits, such as the installation of insufficient fabric fencing that does not offer reasonable screening or protection to adjacent residences, and further indications that farming operations do not appear to occur on Site; and

WHEREAS, the ZBA further considered the CEO Report regarding operation of the Special Use at the Site during the 2022 season, which also indicated, among other things, that the fencing installed at the Site was not in compliance with conditions to the 2022 special permit as it consisted only of black and blue fabric attached to animal fence stakes, in three sections of insufficient length to provide effective screening to adjoining residences to the north of the Site, and further indicated that unauthorized activities occurred on Site during the 2022 season such as the construction of a stage for a regular dance show performed 3-4 times each weekend; and

WHEREAS, the ZBA notes that the Planning Board's discussion and public comment at the June 17, 2024 meeting placed particular emphasis on concerns that the Site does not include any activities that would meet the Zoning Ordinance's definition of a "farm" as a parcel of 10 acres or more that "is used primarily for gain in the raising or keeping of agricultural products, livestock, poultry or dairy products," and therefore the Special

4

Use is not one that may properly be authorized as an "agricultural tourism related activity" within the meaning of Zoning Ordinance 127-11(D)(14); and

WHEREAS, the Applicants' counsel clarified that, in fact, the following farm operations are ongoing at the Site: Christmas trees, corn, squash, and pumpkins are grown on Site; and

WHEREAS, the ZBA acknowledges correspondence to the Town from the New York State Department of Agriculture and Markets, dated February 15, 2022 (the "**Agriculture & Markets Letter**"), which found that Haunted Forest LLC's production, preparation, and marketing of Christmas trees, corn, and pumpkins constituted a "start-up farm operation" within the meaning of the Agriculture and Markets Law, and which further stated the Department's determination that prior conditions to the 2021 Special Permit with regard to noise, light, safety, ingress/egress, and hours of operation  and liability insurance requirements did not unreasonably restrict farm operations, and which further endorsed a particular condition to the 2021 Special Permit that required the Applicants to submit annual financial information for the purported farm operation to demonstrate the Special Use would be consistent on an ongoing basis with the Agriculture and Markets Law guidelines that define agritourism as an activity used as part of a direct marketing strategy for a farm operation and its primary purpose must be to sell the farm's products/services, and not to serve as a recreational use of land; and

WHEREAS, the ZBA acknowledges that the Agriculture and Markets Law and related guidelines define activities as incidental to a farm operation only when gross annual receipts from vendor/rental fees, admission fees, sale of non-agricultural products etc. do not exceed 30% of total gross sales from the retail sale on-site of crops/livestock, but that such a comparative analysis of percentage of revenues is generally unnecessary where a farm operation offers a recreational activity or holds a special event only as part of its overall marketing strategy, and where the event is open to the general public, and the farm's agricultural products/services are sold at the event with no admission, facility rental and or vendor fees involved; and

 WHEREAS, the ZBA further acknowledges that Agriculture and Markets Law Section 305-a encourages local land use decision making and administration of zoning ordinances in such a manner as may realize the policy and goals of the Agriculture and Markets Law to conserve and protect agricultural lands as valued natural and ecological resources which provide open spaces, clean air, and aesthetic benefits, and encourage the development and improvement of agricultural land for production of food and other agricultural products; and

5

WHEREAS, based on the foregoing, the ZBA finds that it is appropriate to grant the 2024 Renewal Application only subject to the following conditions to ensure the Special Use will be consistent with the RR200 District's purpose, and will not detract materially from the use or enjoyment of neighboring properties, nor generate noise, light, or traffic/parking conditions that adversely affect the neighborhood, and to ensure the Special Use will realize the policy and goals of the Agriculture and Markets Law:

1. Permit granted for limited operating dates seasonally from Friday, September 20th, 2024 to Sunday, October 27, 2024, with a requirement for an annual renewal term in light of the Special Use's history at Site and feedback from the public and surrounding uses regarding impacts to the neighborhood.

2. Days/Hours of operation shall be Friday & Saturday 5pm -11pm and Sundays during October from 5pm-10pm; all ticket sales to stop at 9:30pm on Friday/Saturday evenings with patrons to depart by 11pm, and ticket sales to stop at 8:30pm on Sunday evenings with patrons to depart by 10pm.

3. Live band(s), amplified music, use of microphones, and/or stage shows of any kind are prohibited. The timing and type of all noise emanating off Site from the Special Use must comply with Town Code Section 94-2, which prohibits sound from the premises of any permitted use from creating a public inconvenience, annoyance, or alarm, or recklessly creating such risk by the making of "unreasonable noise," which shall mean a sound that is "excessive or unusually loud and that disturbs the peace comfort, or repose of a reasonable person of normal sensitivities" (*e.g.* no chainsaw sounds or blood curdling screams). Should complaints be received during operation of the Special Use regarding noise, a sound study or monitoring must be provided by Applicants if requested by the Town to ensure the Special Use remains consistent with the ambient sound levels around the Site.

4. To protect neighboring properties from car headlights shining out of the parking area and to screen the adjoining residences from the Special Use's visual effects, permanent and opaque fencing of at least 6 ft. in height and 300 ft. in length to be installed at the northern property line sufficient to screen the adjoining residences to the north, and similar fencing to be installed to screen neighboring residence at the southeast corner of the Site.

5. Vehicles to be backed in on the east side of the parking lot to reduce glare from lights to neighbors adjoining and across the street.

6. A minimum of three qualified parking attendants required during all hours of operation to help facilitate ingress/egress and manage light pollution control measures for headlights.

7. Applicants to provide a shuttle to off-Site parking locations to avoid increases in traffic to the residential district and to deter parking on sides of Beebe Road.

6

8. Applicants to submit photographic proof to CEO on or before first day of annual operations, that "no parking" signs are posted in adequate locations to deter parking along Beebe Road. Such signs to be maintained throughout the season.
9. Security cameras to be installed and maintained on Site and sufficient security personnel staffed during hours of operation to ensure orderly conduct from patrons consistent with the RR200 District's rural, residential, family oriented setting.
10. Wine and beer allowed from NYS vendors, food trucks permitted during hours of operation.
11. The Special Use is to comply with all federal, state, and local laws.
12. A $2,000,000 liability policy must be in place prior to event start date and on file with the Town.
13. Porta Johns and dumpsters must be located a minimum of 100 ft. from the front property line and 50 ft. from side property lines; and all other activities, including parking, should be conducted at a setback of 100 ft. from the front property line.
14. A description of the Special Use's agricultural components and farm operation must be submitted to the CEO in advance of operations beginning, with revenue and financial reports for the "farm operation" conducted on Site, as needed for the Town to verify that the Special Use remains consistent with the requirements of the Zoning Ordinance Section 127-11(D)(14) and Agriculture and Markets Law guidelines for farm operations and agritourism, with a primary purpose to sell the farm's crops, livestock and livestock products, and not to serve as an inappropriate recreational use of land in the RR200 District;
15. The Special Use is limited to the operation of a hay ride, corn maze, farmer's market, and similar activities, and operation of the "Haunted Barn" is expressly prohibited as disruptive to adjoining properties by way of noise, light and other characteristics; and

WHEREAS, subject to the foregoing conditions 1-15 (the "**Conditions**"), the ZBA makes the following findings with regard to the Special Use at the Site:

1. Consistent with purpose. The Special Use is expressly limited to appropriate activities such as hay rides, a corn maze and farmer's market, which are consistent with the general purposes of the Zoning Ordinance and the RR200 District to promote agricultural activities and family oriented activities that require open space.
2. Specific requirements met. Though the ZBA finds that Applicants have not complied with prior conditions regarding fencing/screening, parking, and noise in connection with prior operations at the Site, the ZBA finds that the Conditions above are specific and enforceable, and sufficient to limit impacts to surrounding

7

properties. The ZBA finds that a renewal period of 10 years as requested by the Applicants in the 2024 Renewal Application is not an appropriate renewal time period and that the Conditions limiting operating dates to a single annual season from Friday, September 20, 2024 to Sunday, October 27, 2024, are an appropriate term consistent with Code Section 127-46(C) and permit periodic review of the Special Use in light of the established character of the Special Use at the Site, and based upon feedback from the public regarding impacts to the neighborhood that require more frequent review to protect the rural residential character of the RR 200 District.

3. Neighboring properties protected. The ZBA finds that the above Conditions with enforceable requirements for screening, limitations on the timing and type of noise, limitations on light pollution and headlights, requirements for parking attendants and methods and security, and the limitations on the intensity and purposes of the Special Use to only those activities consistent with the Agriculture and Markets Law definition of "farm operation" and "agritourism" and the Zoning Ordinance's definition of "agricultural tourism related activities," will ensure that the Special Use will not detract materially from the use or enjoyment of neighboring properties.

4. Traffic adequacy & safety. The ZBA finds that the Conditions above reading fencing/ screening of headlights, and requirements for parking attendants and parking methods on Site, in addition to off-Site shuttle options, together with posted "No Parking" signs along Beebe Road, all together ensure that the streets serving the Special Use are adequate for the traffic that will be generated by the Special Use so as not to create traffic conditions that will adversely affect the neighborhood as in past operating years.

5. Effect on utilities and provision for sanitary sewage and storm drainage. The ZBA finds that the nature of the Special Use as an outdoor activity that primarily utilizes portajohns for patrons during limited hours of operation, and which does not involve the use of substantial public services or utilities, will have no adverse effect on the logical, efficient and economical provision of public services and utilities, or the treatment of sanitary sewage or storm run off in the Town.

6. Town appearance. The visual effect of the Special Use will not be deleterious to the appearance of the Town because the Conditions require the installation of permanent and opaque fencing to act as a visual barrier where needed along the northern Site boundary for effective screening to protect the closest adjoining residential properties.

NOW, THERFORE, BE IT RESOLVED BY THE MEMBERS OF THE TOWN OF WILSON ZONING BOARD OF APPEALS, that the 2024 Renewal Application is granted, subject to the Conditions described herein.

8

The question of the adoption of the foregoing Resolution was put to a vote on roll call, which resulted as follows:

| | |
|---|---|
| <u>Yay</u> | John Sinclair, Chairman |
| <u>Absent</u> | John Moley |
| <u>Yay</u> | Robin Mignella |
| <u>Yay</u> | Brian Peck |
| <u>Yay</u> | Corey Harmon |
| <u>Yay</u> | Amy Wiltse, *Alternate* |

9